Chief Judge GIERKE
delivered the opinion of the Court.
The lower court found excessive post-trial delay, but declined to grant relief because it determined that the delay did not prejudice Appellant and that the sentence was appropriate. Like the lower court, we conclude that the unexplained post-trial delay in this case was unreasonably lengthy. The key issue before this Court is whether the unreasonable post-trial delay prejudiced Appellant as a matter of law. Appellant’s own declaration and declarations from three officials of a potential employer indicate, with various degrees of certainty, that he would have been considered for employment or actually hired if he had possessed a discharge certificate (DD-214). We hold that these unrebutted declarations were sufficient to demonstrate prejudice.
I. BACKGROUND
On January 11, 2000, in accordance with Appellant’s pleas, a special court-martial found him guilty of two specifications of unauthorized absence and two specifications of missing movement by design, in violation of Articles 86 and 87 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886 and 887.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 45 days, and reduction to pay grade E-l. As the lower court noted, Appellant’s “uneontested special court-martial lasted just 55 minutes.”[2]
“Even though the verbatim record of trial is only 37 pages in length, it took over 6 months, until [July 17,] 2000, for the record to be transcribed, authenticated, and served on Appellant’s trial defense counsel.”[3] Another sixty-six days would pass before the staff judge advocate issued the Rule for Courts-Martial 1106 recommendation. That document was not served on the defense counsel until October 2, 2000 — 265 days after the trial ended. Finally, on October 27, 2000 — 290 days after trial — the convening authority acted. In accordance with the pretrial agreement, the convening authority suspended all confinement in excess of thirty days for a period of twelve months from the date of the convening authority’s action.
But the convening authority’s action did not end the delay in this case. The Navy-Marine Corps Court did not receive the record of trial until January 9, 2001 — seventy-four days after the convening authority acted and two days short of a year from the date of trial.
In October 2001, the Navy-Marine Corps Court affirmed the findings and sentence in an unpublished opinion, rejecting Appellant’s argument that he was entitled to relief based on the unreasonably lengthy post-trial delay. This Court later set aside that decision and remanded the case for further consideration of the sentence’s appropriateness in light of United States v. Tardif,[4] which was decided after the lower court’s initial review of Appellant’s case. In June 2003, the Navy-Marine Corps Court again affirmed the findings and *82 sentence.[5] This Court then granted Appellant’s petition for review[6] and later specified an additional issue concerning whether the lower court erred by concluding that Appellant’s showing of prejudice arising from the post-trial delay was “too speculative.”[7]
Before the lower court, Appellant submitted a declaration concerning his post-trial activities, as well as three declarations from officials of a potential employer. In May and June of 2000, Appellant completed a course of study at a truck driver’s school and received a truck driver’s license. In July 2000 — a bit more than four months after he went on appellate leave and approximately six months after his court-martial — Appellant applied for a job with U.S. Xpress Enterprises, a national trucking company.
A declaration from Mr. Joseph Fuller, the director of U.S. Xpress’s Driver Services Department, stated that Appellant had applied for a position as a driver. Mr. Fuller explained that under company policy, job applicants who were in the military must provide “a form DD-214, Proof of Discharge Certificate. Since Anthony Jones was unable to provide such documentation, we were unable to complete a check of his employment background in order to process his application. As such, he was not considered for employment.” Mr. Fuller was aware of Appellant’s court-martial conviction and pending bad-conduct discharge. Nevertheless, “Under our current company policy, Anthony Jones would not have been excluded from consideration for employment based solely upon the adverse discharge from the armed forces. Instead, our company would evaluate the underlying conduct that led to the offenses.” Mr. Fuller observed that “given the uniquely military offenses committed by Anthony Jones and, assuming that he was otherwise qualified, he would have been seriously considered for employment during the summer of 2000 had he possessed a DD-214.” Appellant also presented a declaration from Ms. Afton Yazzie, an Assistant Instructor with U.S. Xpress. She stated that Appellant participated in a company orientation program in July 2000. He was invited “to attend the orientation based upon his initial application and qualifications. Persons attending the company orientation are generally hired upon successful completion as they are pre-screened to ensure that they have the proper licensing and background requirements.” But Appellant’s “employment application had been flagged as he was missing required proof of past employment.” Ms. Yazzie’s declaration stated that “[d]ue solely to his inability to meet this requirement, he was told that he could not complete orientation and a decision on his employment with U.S. Xpress was deferred until he could provide a DD-214.” She also explained that Appellant applied again later in 2()00 and twice in 2001, but each time “the decision was made that his lack of a DD-214 prevented his employment.” The final declaration was from Ms. Brenda Cole, an orientation instructor with U.S. Xpress. Ms. Cole’s declaration was the most certain of the three. She specifically stated, “I can personally attest that had Anthony Jones provided a DD-214 in July 2000, he would have been hired as a truck driver with U.S. Xpress at the conclusion of the orientation program.” She also recounted that as Appellant “was leaving the orientation, one of our recruiters told him to reapply for employment once he received his DD-214 and he would be hired.”
A position with U.S. Xpress would have produced an average salary of $3,500 to $4,000 per month, in addition to substantial employee benefits. When Appellant did not obtain a position with U.S. Xpress, he obtained alternative employment as a delivery truck driver earning about $7 to $10 per hour working part-time or through temporary agencies.
The Government presented no information to rebut any of these declarations.
*83 The Navy-Marine Corps Court found that the post-trial delay in this case was “excessive.”[8] As that court explained, “Each of the various processing steps took weeks or months to accomplish [what] we would reasonably expect a command to accomplish in days or weeks.”[9] The lower court also emphasized its displeasure with “the 11 weeks it took to mail the record to that court.”[10]
Given this finding of unexplained excessive post-trial delay, the central legal issue then became whether the delay had prejudiced Appellant. The Navy-Marine Corps Court held that it did not. The court concluded that “the degree of prejudice is simply too speculative to convince us that Appellant is entitled to relief.”[11] The court reasoned that “[vjirtually all persons whose court-martial sentence includes a bad-conduct discharge who do not waive appellate review of their case live for a lengthy period in civilian life without possession of the DD[-]214.”[12] While stating that “this is a close case,” the court reiterated that “Appellant has not demonstrated that he is entitled to relief, either under Article 59(a), UCMJ, or Article 66(c), UCMJ.”[13]
II. DISCUSSION
Appellant’s trial lasted fifty-five minutes and resulted in a thirty-seven-page record of trial. Yet 363 days elapsed before the record was docketed with the Navy-Marine Corps Court. The Navy-Marine Corps Court found that this unexplained delay was excessive. We similarly conclude that the unexplained post-trial delay was facially unreasonable. This conclusion serves as a trigger for a more extensive due process review.
United States v. Tardif[14] discussed the Courts of Criminal Appeals’ authority to address unreasonable and unexplained post-trial delay under their Article 66 authority to ensure an “appropriate sentence.” Toohey v. United States[15] discussed an appellant’s constitutional due process right to a speedy post-trial review, a right separate and distinct from the “sentence appropriateness” review under Article 66. Our review of this ease deals solely with the Toohey constitutional due process review.
Determining whether post-trial delay violates an appellant’s due process rights turns on four factors: (1) the length of the delay; (2) the reasons for the delay, (3) the appellant’s assertion of the right to a timely appeal; and (4) prejudice to the appellant.[16] As we have explained, the “length of delay” factor serves two functions: “First, the length of delay is to some extent a triggering mechanism, and unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, there is no necessity for inquiry into the other factors that go into the balance.”[17] Second, “if the constitutional inquiry has been triggered, the length of delay is itself balanced with the other factors and may, in extreme circumstances, give rise to a strong presumption of evidentiary prejudice affecting the fourth Barker factor.”[18] Because we conclude that the post-trial delay in this case was facially unreasonable, we will analyze the remaining three factors.
The Government has offered no justification for the appellate delay in this case, and the record fails to disclose any.
*84 The record also reflects that Appellant complained about the delay in post-trial processing. The lower court found that, “on two or more occasions,” Appellant “contacted a junior member at his unit, explained the problems that he was having in obtaining employment because of the delay in obtaining his DD-214, and made clear his desire to move the process along more rapidly.”[19] The lower court also noted that the record “contains a series of letters and faxes documenting Appellant’s subsequent efforts to engage the Marine Corps, his U.S. Senator, and his appellate defense counsel in expediting the processing of his case.”[20]
In our view, the most critical issue in this case is whether the excessive post-trial delay prejudiced Appellant.[21] Unlike the lower court, we conclude that it did.
Whether Appellant has established prejudice is a legal question subject to de novo review.[22] We have often recognized interference with post-military employment opportunities as a form of prejudice that warrants relief for unreasonable post-trial delay.[23] The record indicates that as a result of the unreasonable post-trial delay, Appellant has suffered this form of prejudice.
Ms. Cole’s declaration affirmatively stated that, based on her personal knowledge, Appellant would have been hired by U.S. Xpress if only he had a DD-214. If that were the only document that Appellant had submitted, it would seem unquestionable that he has established that the unreasonable post-trial delay prejudiced him. But, in addition to his own declaration, Appellant submitted two more declarations from U.S. Xpress officials. One of these, executed by the director of the Driver Services Department, stated that had Appellant had his DD-214, he would merely “have been seriously considered for employment.”
The Government argues that Appellant was not prejudiced by the excessive delay in this ease. At oral argument, the Government observed that the commercial driver’s license that Appellant presented in support of his prejudice claim was issued in October 2000, several months after U.S. Xpress considered him for a position. The Government also observes that Appellant applied for a position with U.S. Xpress approximately six months after his court-martial ended. Even if the post-trial review had been handled with utmost speed, the case would certainly have remained on appellate review at that point and Appellant would not have had his DD-214.
We conclude, however, that Appellant has demonstrated on-going prejudice. His declaration — which the Government has never rebutted — indicated that U.S. Xpress officials told Appellant that he should contact them again once he received his DD-214. Ms. Yazzie’s declaration indicated that Appellant reapplied to U.S. Xpress in the fall of 2000, January 2001, and May 2001. Ms. Yazzie also indicated that Appellant “was, and still is to my knowledge, invited to apply again once he obtains a DD-214.” So Appellant’s ability to have his employment application considered by U.S. Xpress was prejudiced after he obtained the commercial driver’s license attached to his declaration[24] and after he likely would have received a DD-214 if only his *85 post-trial review had been completed within a reasonable time.
No speculation is necessary to conclude that the unrebutted declarations establish that the unreasonable post-trial delay prejudiced Appellant. Nor do the declarations conflict on this point: all four agree that Appellant would have been considered for a position with U.S. Xpress if he had his DD-214. The issue in this case is whether Appellant was prejudiced by the unreasonably lengthy delay, not whether he had a guaranteed offer of employment. In America, there are employers willing to give a second chance to ex-convicts, whether civilian or military, who have paid their debt to society. In this case, the delay prejudiced Appellant’s opportunity for a second chance. We hold that such interference with the opportunity to be considered for employment constitutes prejudice for purposes of the fourth due process factor listed above.
Despite the four unrebutted declarations Appellant has submitted to demonstrate prejudice, the dissent engages in unsupported supposition to reject their import. The simple answer to the dissent’s speculation is that the Government had an opportunity to rebut the declarations but did not do so. Three of the four declarations at issue were executed by officials of U.S. Xpress, who have no apparent connection to either party in this case. If, as the dissent supposes, U.S. Xpress would not have offered Appellant a position if its hiring officials were aware of the extent of his unauthorized absences, then the Government could have obtained and submitted to the lower court evidence demonstrating that point. The Government did not. Rather, the Government provided no counterevidence to the lower court either before or after that court attached the four declarations to the record. It is, therefore, appropriate to accept the content of the unrebutted declarations, rather than guessing as to what the declarants would have said if they hypothetically had access to the information that the dissent discusses. This is consistent with our well-established approach to supplementing the factual record with affidavits while the case is on appeal: “if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.”[25] This is such a case. By considering these unrebutted declarations, which were already attached to the record by order of the lower court, we are not engaging in fact-finding. Rather, we are applying the law to unrebutted facts contained within the record, which is a standard role of an appellate court.[26]
We also disagree with the dissent’s suggestion that in lieu of presenting a DD-214, Appellant could have satisfied his potential employer by providing an affidavit from his defense counsel explaining his status or a copy of his record of trial. Mr. Fuller’s declaration indicates that it was the lack of the form itself — and not the absence of information from that form — that disqualified Appellant as a prospective employee. Some employers’ insistence that veterans applying for jobs present a DD-214 is understandable. They may be reluctant to devote time and money to train a prospective employee without documentation demonstrating that the individual is no longer on active duty. But regardless of whether Appellant’s potential employer should have required a DD-214 as a condition of employment, it appears that the potential employer did. The unreasonable post-trial delay in this case prevented Appellant from satisfying that requirement.
We therefore conclude that Appellant was prejudiced by the facially unreasonable post-trial delay. Balancing the four factors, we hold that the post-trial delay violated Appellant’s due process rights. The same evidence that supports the due process test’s prejudice factor also demonstrates prejudice *86 for purposes of Article 59(a), UCMJ.[27] Accordingly, Appellant is entitled to relief.
III. REMEDY
Because this case involves a finding of legal error accompanied by Article 59(a) prejudice, we may order a remedy ourselves rather than remanding the case for that purpose. We consider ordering relief ourselves to be particularly appropriate to bring a close to the overly prolonged post-trial proceedings in this case. Formulating such a remedy is an exercise of authority under Article 59(a) to eliminate material prejudice to Appellant’s due process rights; it is entirely distinct from the Court of Criminal Appeals’ Article 66(e) sentence appropriateness powers.
In Tardif, we considered whether a court that finds unexplained and unreasonable post-trial delay can grant relief “short of dismissal of the charges.”[28] We noted that Dunlap v. Convening Authority[29] adopted a universal remedy for unreasonable post-trial delay: dismissal of the charges and specifications. But in Tardif, we also recognized criticisms of “the draconian remedy required by Dunlap and its progeny.”[30] We cited with approval the pre-Dunlap rule that “denial of the right to speedy trial resulted in dismissal of the charges only if reversible trial errors occurred and it was impossible to cure those errors at a rehearing because of the excessive post-trial delay.”[31]
In Tardif, we noted that “appellate courts are not limited to either tolerating the intolerable or giving an appellant a windfall.”[32] Rather, in cases involving unreasonable post-trial delay, courts should “tailor an appropriate remedy, if any is warranted, to the circumstances of the case.”[33]
In this case, an appropriate remedy is to disapprove the bad-conduct discharge. Appellant pleaded guilty, and nothing that has occurred since trial has suggested that the findings are not accurate. Setting aside the findings would be a windfall for Appellant.
Setting aside the bad-conduct discharge is a remedy more proportionate to the prejudice that the unreasonable post-trial delay has caused. The post-trial delay has had an adverse effect on Appellant’s ability to find employment. Removing the bad-conduct discharge’s adverse effect on Appellant’s employment opportunities may help to restore him to the position he would have been in had the post-trial review been accomplished with reasonable speed.
IV. DECISION
The portion of the United States Navy-Marine Corps Court of Criminal Appeals’ decision affirming the bad-conduct discharge is reversed. The bad-conduct discharge is set aside. The remainder of the Navy-Marine Corps Court of Criminal Appeals’ decision, which affirmed the findings and confinement for forty-five days (as partially suspended by the convening authority) and reduction to pay-grade E-l, is affirmed.

. 10 U.S.C. §§ 886, 887 (2000).

. United States v. Jones, No. NMCM 200100066, 2003 CCA LEXIS 155, at *3, 2003 WL 21785470, at *1 (N.M.CtCrim.App. June 19, 2003).

. Id.

. United States v. Jones, 57 M.J. 443 (C.A.A.F.2002) (citing United States v. Tardif, 57 M.J. 219 (C.A.A.F.2002)).

. United States v. Jones, No. NMCM 200100066, 2003 CCA LEXIS 155, 2003 WL 21785470 (N.M.Ct.Crim.App. June 19, 2003).

. United States v. Jones, 59 M.J. 222 (C.A.A.F.2003).

. United States v. Jones, 60 M.J. 287 (C.A.A.F.2004).

. Jones, 2003 CCA LEXIS 155 at *7, 2003 WL 21785470 at *3.

. Id. at *18, 2003 WL 21785470 at *6.

. Id., 2003 WL 21785470 at *6.

. Id. at *23, 2003 WL 21785470 at *10.

. Id. at *23-*24, 2003 WL 21785470 at *8 (quoting United States v. Dupree, 37 M.J. 1089, 1092 (N.M.C.M.R.1993)).

. Id. at *24, 2003 WL 21785470 at *8.

. 57 M.J. 219 (C.A.A.F.2002).

. 60 M.J. 100 (C.A.A.F.2004).

. Id. at 102 (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

. Id. (quoting United States v. Smith, 94 F.3d 204, 208-09 (6th Cir.1996) (internal quotation marks omitted)); Barker, 407 U.S. at 530, 92 S.Ct. 2182 (1972).

. 60 M.J. at 102 (quoting Smith, 94 F.3d at 209) (internal quotation marks omitted); Doggett v. United States, 505 U.S. 647, 657, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

. Jones, 2003 CCA LEXIS 155, at *21, 2003 WL 21785470, at *7.

. Id.

. Of course, in the exercise of their unique Article 66(c) sentence appropriateness powers, the Courts of Criminal Appeals retain the authority to grant sentence relief for unexplained and unreasonable post-trial delay even absent prejudice. See United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F.2002).

. See United States v. Diaz, 45 M.J. 494, 496 (C.A.A.F.1997) (We hold that a de-novo-review standard to assess prejudice [is] required by Article 59(a), UCMJ, 10 USC § 859(a)....); Tardif, 57 M.J. at 228 (Sullivan, S.J., dissenting) (We review a Court of Criminal Appeals decision on prejudice resulting from post-trial delay on a de novo basis.).

. See, e.g., United States v. Sutton, 15 M.J. 235 (C.M.A.1983); United States v. Gentry, 14 M.J. 209 (C.M.A.1982) (summary disposition); United States v. Clevidence, 14 M.J. 17 (C.M.A.1982).

. We also note that Appellant may have previously received another commercial driver's license issued before he attended the U.S. Xpress orientation.

. United States v. Ginn, 47 MJ. 236, 248 (C.A.A.F.1997).

. See generally 1 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 2.18 (3d ed.1999).

. 10 U.S.C. § 859 (2000).

. Tardif, 57 M.J. at 224. We cite Tardif only for its discussion of the appropriate remedy for unreasonable post-trial delay. Id. at 224-25. The bases of our ruling are the Fifth Amendment’s Due Process Clause and Article 59(a).

. 23 C.M.A. 135, 48 C.M.R. 751 (1974).

. See 57 M.J. at 224.

. Id. (citing United States v. Timmons, 22 C.M.A. 226, 227, 46 C.M.R. 226, 227 (1973)).

. Id. at 225.

. Id.