# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32369**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Joseph S. BOOKS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 31 March 2017

————————————

*Military Judge:* Natalie D. Richardson.

*Approved sentence:* Bad-conduct discharge, confinement for 21 days, and reduction to E-1. Sentence adjudged 27 October 2015 by SpCM convened at Luke Air Force Base, Arizona.

*For Appellant:* Captain Patricia Encarnación Miranda, USAF.

*For Appellee:* Major G. Matt Osborn, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge SPERANZA joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

JOHNSON, Senior Judge:

A special court-martial composed of a military judge sitting alone found Appellant guilty, in accordance with his pleas, of one specification of wrongfully using cocaine on divers occasions and one specification of wrongfully using promethazine with codeine, both in violation of Article 112a of the Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 912a. Appellant's adjudged and approved sentence included a bad-conduct discharge, confinement for 21 days, and reduction to the grade of E-1.[1]

Appellant raises a single assignment of error on appeal: that the staff judge advocate's recommendation (SJAR) provided erroneous advice to the convening authority regarding the maximum imposable punishment and the convening authority's ability to reduce Appellant's term of confinement. In addition, although not raised by the parties, we address a facially unreasonable delay in the post-trial processing of Appellant's case. Finding no relief is warranted, we affirm the findings and sentence.

## I. BACKGROUND

At some point in 2014, Appellant and another servicemember, Airman First Class (A1C) KH, met a civilian at a nightclub in Scottsdale, Arizona, who offered them cocaine. The Airmen followed the civilian into the club's restroom where they both inhaled cocaine off of a house key. On 5 July 2015, Appellant used cocaine with A1C KH again, this time in A1C KH's dorm room on Luke Air Force Base.

The following day, Appellant was selected to provide a urine sample for drug testing. Not surprisingly, his sample tested positive for benzoylecgonine, the metabolite of cocaine. On 16 July 2015, Appellant was interviewed by agents of the Air Force Office of Special Investigations (AFOSI) and admitted to using cocaine in A1C KH's dorm room earlier in the month.

Later on 16 July 2015, after the AFOSI interview, another Airman, A1C CM, brought Appellant a mixture of promethazine and codeine. A1C CM suggested they drink this "drug cocktail" to "take the edge off." Appellant agreed. The following day Appellant consented to provide another urine sample, which tested positive for morphine, a metabolite of codeine with promethazine.

This new positive urinalysis result prompted another interview with AFOSI on 12 August 2015. Appellant admitted drinking the promethazine/codeine mixture in July, but denied using any other illegal substances. He consented to another urinalysis, which again tested positive for benzoylecgonine, the metabolite of cocaine. At trial, Appellant acknowledged he may have used cocaine prior to providing the 12 August 2015 urine sample without being able to remember doing so due to an alcohol-induced memory blackout.

---

[1] A pretrial agreement (PTA) between Appellant and the convening authority provided the latter would approve no confinement in excess of 60 days, but included no other limitations on the sentence he could approve. Accordingly, the PTA had no impact on the convening authority's ability to approve the adjudged sentence.

## II. DISCUSSION

### A. Staff Judge Advocate Recommendation

Following Appellant's trial, and after he was released from confinement, the staff judge advocate (SJA) prepared the SJAR to guide the convening authority's action on the results of the court-martial. The SJAR provided, *inter alia*, the following advice:

> The maximum imposable sentence for the offenses for which [Appellant] was convicted is reduction to the grade of E-1, *forfeiture of two-thirds pay per month for twelve months*, 12 months confinement, a bad conduct discharge, *and a fine.*
>
> . . . .
>
> As the convening authority, you do not have the authority to disapprove, commute, or suspend, in whole or in part, the bad conduct discharge. *The 21 days of confinement have already been served by [Appellant].* You have the authority to disapprove, commute or suspend, in whole or in part, the reduction to the grade of E-1.

(Emphasis added). The SJAR concludes with a recommendation that the convening authority approve the sentence as adjudged.

In accordance with Rule for Courts-Martial (R.C.M.) 1106(f)(1), trial defense counsel was served with a copy of the SJAR prior to submitting matters on behalf of Appellant for the convening authority's consideration pursuant to R.C.M. 1105. The Defense did not object to any portion of the SJAR. Trial defense counsel submitted a memo with several attachments that acknowledged the convening authority was not authorized to disapprove the bad-conduct discharge, and instead asked that he disapprove the reduction to E-1. Appellant also submitted a statement noting that he had already served his time in confinement and would be leaving the Air Force with a bad-conduct discharge, but requesting the convening authority restore his rank to E-3.

The SJA subsequently prepared an addendum to the SJAR that advised, *inter alia*, that the convening authority must consider the matters submitted by the Defense and again recommended approval of the sentence as adjudged. The convening authority approved the adjudged sentence. Appellant now contends the SJAR was erroneous in two respects: first, it misstated the maximum punishment as including the possibility of forfeiture of two-thirds of Appellant's pay for twelve months *and* a fine; and second, it incorrectly advised the convening authority regarding his authority to reduce Appellant's term of confinement.

The proper completion of post-trial processing is a question of law which this court reviews de novo. *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted)). If the Defense does not make a timely comment on an error in the SJAR, the error is forfeited "unless it is prejudicial under a plain error analysis." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citing R.C.M. 1106(f); *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Under a plain error analysis, Appellant must persuade this court that: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Kho*, 54 M.J. at 65).

To meet the third prong of the plain error test in the context of a post-trial recommendation error, whether that error is preserved or is otherwise considered under the plain error doctrine, Appellant must make "some colorable showing of possible prejudice." *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65). "The low threshold for material prejudice with respect to an erroneous post-trial recommendation . . . is designed to avoid undue speculation as to how certain information might impact the convening authority's exercise of such broad discretion." *Id.* at 437. While the threshold is low, there must be some colorable showing of possible prejudice. *Id.*

Because Appellant did not object to the SJAR, we test the allegedly improper advice for plain error. We consider each asserted error in turn.

**1. Maximum Punishment**

R.C.M. 1003(b)(3) provides, in pertinent part:

> Any court-martial may adjudge a fine in lieu of or in addition to forfeitures. In the case of a member of the armed forces, summary and special courts-martial may not adjudge any fine or combination of fine and forfeitures in excess of the total amount of forfeitures that may be adjudged in that case.

The maximum forfeiture that a special court-martial may adjudge is two-thirds of the accused's pay per month for 12 months. R.C.M. 201(f)(2)(B)(i). Thus, Appellant could not have been sentenced to a fine in addition to forfeiture of two-thirds pay per month for 12 months. Contrary to the Government's position that the SJA merely accurately listed authorized punishments, the SJAR plainly represented that the maximum imposable punishment included both forfeiture of two-thirds pay per month for 12 months *and* a fine. This was a clear error.

However, Appellant has not made a colorable showing of possible prejudice arising from this error. At trial, the Government conceded a fine was not appropriate in this case, and the military judge did not include the possibility of a fine when she informed Appellant of the maximum punishment she could

adjudge as a result of Appellant's guilty plea. The military judge did not adjudge a fine, nor did she adjudge any forfeiture of pay. Thus the convening authority was not called upon to make any decisions regarding adjudged forfeitures or a fine when he acted upon the sentence. We are not persuaded the erroneous inclusion in the SJAR of the possibility of a fine exaggerated the severity of Appellant's conduct or in any other way influenced the convening authority to Appellant's detriment. Because Appellant has failed to make a colorable showing of possible prejudice, he is entitled to no relief.

### 2. Confinement Served

Appellant asserts the SJA's statement that Appellant had already served his term of confinement, juxtaposed with his advice that the convening authority could not disapprove, suspend, or modify the bad-conduct discharge but could change the reduction in grade, "misadvised" the convening authority regarding his authority to reduce the term of confinement. We recently rejected a similar argument in *United States v. Carnio-Navarro*, No. ACM S32340, 2017 CCA LEXIS 90, *11–13 (A.F. Ct. Crim. App. 9 Feb. 2017), and we reach the same conclusion here. The statement that Appellant had completed his term of confinement was accurate. Nowhere does the SJAR state that the convening authority could not reduce or modify Appellant's sentence to confinement. At most, it fails to affirmatively advise the convening authority that he could disapprove, commute, or suspend the term of confinement, in whole or in part, notwithstanding the fact that Appellant had already served it. The omission of this advice was not plain or obvious error. *See id.*; *see also* R.C.M. 1106(d)(3),(4) (setting forth required SJAR contents).

Assuming, *arguendo*, that the omission of this advice was plainly erroneous, Appellant has not demonstrated any colorable showing of possible prejudice. *See Scalo*, 60 M.J. at 436. Appellant did not request any reduction in his term of confinement. Indeed, he cited his completed term of confinement as part of the "process" that has enabled him to reflect on his mistakes and "rehabilitated" him. Instead, Appellant requested only that his reduction in grade be disapproved. As in *Carnio-Navarro*, we find that the term of confinement "was not of such unusual duration or severity that there was a reasonable likelihood that the term of confinement alone—without any argument or complaint by Appellant—'would have attracted the convening authority's attention for purposes of clemency.'" *Carnio-Navarro*, 2017 CCA LEXIS 90 at *13 (quoting *Scalo*, 60 M.J. at 437). This is particularly so given that a pretrial agreement between the convening authority and Appellant provided the convening authority could have approved confinement up to 60 days. Therefore, we are convinced that the omission of affirmative advice to the convening authority regarding his authority to modify the term of confinement, even if the omission

was erroneous, had no material adverse impact on Appellant's clemency request. Because Appellant's substantial rights were not materially prejudiced, he is entitled to no relief.

**B. Post-Trial Delay**

Although not raised by the parties, we note the convening authority acted on Appellant's court-martial on 24 November 2015, but the record of trial was not docketed with this court until 5 January 2016. This 42-day period exceeded the 30-day threshold for a presumptively unreasonable post-trial delay established by the Court of Appeals for the Armed Forces in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we have considered the four factors[2] identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated. *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)). Where, as here, an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Significantly, the convening authority took action only 28 days after Appellant's trial, dramatically faster than the 120-day standard for presumptively unreasonable delay established in *Moreno*. 63 M.J. at 142. Considering the relevant factors together, we conclude the delay was not so egregious as to impugn the fairness and integrity of the military justice system, and thus we find no due process violation.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors[3] enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J.

---

[2] These factors include: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant.

[3] These factors include: (1) how much the delay exceeded the *Moreno* standards; (2) what reasons, if any, the Government set forth for the delay, and whether there is evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) keeping in mind that the goal under *Tardif* is not to analyze for prejudice, whether there is nonetheless some evidence of harm caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing; and (6) given the passage of time, whether this court can provide meaningful relief in this particular case.

264 (C.A.A.F. 2016), we conclude it is not. On the whole, the processing of Appellant's case has not been subjected to excessive post-trial delay, and we can discern no substantial harm to Appellant, prejudice to the interests of justice or discipline, or erosion of this court's ability to conduct our review or grant appropriate relief that would move us to modify an otherwise proper sentence.

## III. Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court