# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39660**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jose L.C. CORTES**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 December 2020

————————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Bad-conduct discharge, confinement for 3 years, and reduction to E-1. Sentence adjudged 1 September 2018 by GCM convened at Joint Base San Antonio-Randolph, Texas.

*For Appellant:* Major Rodrigo M. Caruço, USAF; Captain Matthew L. Blyth, USAF.

*For Appellee:* Colonel Shaun S. Speranza, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire.

Before LEWIS, D. JOHNSON, and CADOTTE, *Appellate Military Judges.*

Judge CADOTTE delivered the opinion of the court, in which Senior Judge LEWIS and Judge D. JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

CADOTTE, Judge:

A general court-martial composed of officer members found Appellant, contrary to his pleas, guilty of one specification of aggravated sexual contact with a child who had not attained the age of 12 years, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920,[1,2] and two specifications of sexual abuse of a child who had not attained the age of 16 years, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b.[3] Officer members sentenced Appellant to a bad-conduct discharge, confinement for three years, and reduction to the grade of E-1. On 13 March 2019, the convening authority approved the adjudged sentence and, pursuant to Article 58b(b), UCMJ, 10 U.S.C. § 858b(b), waived mandatory forfeitures for a period of six months or release from confinement, whichever was sooner, commencing on the date of action.

Appellant's counsel submitted the case to us on its merits with no specific assignment of error. However, Appellant personally raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant asserts: (1) his convictions "are not factually or legally sufficient due to the inconsistencies in testimony and credibility of the witnesses;" and (2) "the period of time between announcement of sentence and convening authority action deprived Appellant of his right to speedy appellate review." *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). During our Article 66(c), UCMJ, 10 U.S.C. § 866(c) review, we identified and considered two additional issues not raised by Appellant: (3) whether Appellant is entitled to sentencing relief as a result of facially unreasonable delay of appellate review; and (4) whether Appellant is entitled to relief as a result of the convening authority's failure to act on a deferment of forfeitures request or provide written reasons for denial of a request for deferment of reduction in grade.

We carefully considered Appellant's contention that his convictions are not factually or legally sufficient, and determined it does not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987); *see also United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

---

[1] Unless otherwise noted, all references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*).

[2] Appellant was found guilty of committing the offense on divers occasions and the charged timeframe for this specification is "between on or about 1 August 2008 and on or about 30 June 2010." *See* 2016 *MCM*, App. 28, A28-1–17.

[3] Appellant was found guilty of committing the offense on divers occasions for both specifications and the charged timeframe for both specifications is "between on or about 1 May 2014 and on or about 30 September 2014." *See Manual for Courts-Martial, United States* (2012 ed.).

We find sentence relief is not warranted for facially unreasonable delay for issues (2) and (3), which are addressed below. However, sentence relief is warranted for part of issue (4) as a result of the convening authority's failure to take written action on Appellant's request for deferment of forfeitures, and we take action as set forth in our decretal paragraph.

# I. BACKGROUND

Each of Appellant's convictions—aggravated sexual contact with a child and two specifications of sexual abuse of a child—involve his stepdaughter, KA. The convictions occurred during Appellant's first two duty assignments: Eglin Air Force Base (AFB), Florida, and MacDill AFB, Florida. Appellant's convictions for sexual abuse of KA spanned the timeframe from 1 August 2008 to 30 May 2014.[4] At the beginning of the charged timeframe, KA was six years old and by the end, she was twelve years old. KA is the daughter of Appellant's former wife, EA.

When KA reported the allegations against Appellant, she was 14 years old and attending a boarding school in New Hampshire. In February 2017, she disclosed to CM—a board certified clinical social worker employed by the boarding school in their counseling and psychological services department—that she had been sexually abused. KA reported that the abuse occurred initially between the ages of four to six. CM testified that KA told her the abuse first began in Guam, then occurred in Mississippi, and continued in Florida, but KA did not wish to disclose the identity of the person who abused her or provide any details of the abuse. After meeting with KA, CM reported the abuse to the Division of Children and Youth and Families in New Hampshire. At trial, evidence was presented as to the details of the disclosed abuse. Appellant was acquitted of some of the offenses he was charged with; this opinion will focus on the offenses he was convicted of.

## A. Crestview, Florida

In August 2008, Appellant and his family moved to Fort Walton Beach, Florida, and then into a home in nearby Crestview, Florida. Both locations were near Eglin AFB, Florida. When the family moved to Crestview, KA was six years old. KA testified that while living in Crestview "[s]ometimes [she] would wake up in the morning and [she] would find that [her] clothes were off." KA was not specific as to which bed she would wake up in with her clothes off.

---

[4] KA also testified that Appellant sexually abused her in Guam before he joined the Air Force and at Keesler AFB, Mississippi when he attended technical training. Appellant was not charged with an offense for the pre-service conduct and he was acquitted of aggravated sexual contact of KA, an alleged violation of Article 120, UCMJ, while at Keesler AFB.

KA testified further that in the middle of the night, Appellant would make her go into the main bedroom and "pull [her] underneath the blanket." KA was laying on her back on the bed. Appellant referred to being under the blanket as a "tent." KA testified the Appellant would be on top of her wearing shorts and a shirt. Appellant would press his penis against her "private parts" while she was laying on her back. KA testified this happened more than twice, but KA was not able to give an exact number of times it occurred. KA did not explain where her mother was when these events transpired. However, on cross-examination, Appellant testified that during the timeframe the family lived in Crestview, Florida, there were times he was alone with the children. Appellant also testified his wife worked for a rental car company and conceded rental car companies "have weird hours." The court members convicted Appellant of aggravated sexual contact of KA, a child who had not attained the age of 12 years, on divers occasions, by causing her groin[5] to touch his groin through the clothing with the intent to gratify his sexual desire.[6]

## B. Tampa, Florida

In 2012, Appellant completed a permanent change of station move to Tampa, Florida. After the move, Appellant and KA's mother divorced. Appellant resided in a separate apartment and no longer lived with KA. Despite the divorce, in the summer of 2014, KA stayed at Appellant's apartment on multiple occasions along with her younger siblings. Appellant would meet KA's mother at a CVS to exchange the children. Appellant would then drive the children to his apartment. KA testified she was scared during the drive. While at Appellant's apartment, KA testified Appellant would make KA get on top of him and "rub [her] private area against his." KA testified he would also touch her breasts while she was on top of him. She testified that the Appellant's penis was erect and sometimes he would grab KA's hair or waist. KA was about 12 years old at the time. The court members convicted Appellant of two specifications of sexual abuse of a child who had not attained the age of 16 years, on divers occasions—one specification for touching her breasts with his hand,

---

[5] The court members' findings excepted the word "buttocks" and substituted the word "groin."

[6] The court members also acquitted Appellant of aggravated sexual abuse of KA, a child who had not attained the age of 16 years, by allegedly placing his penis in her mouth during the timeframe the family lived in Crestview, Florida.

with the intent to gratify his sexual desire, and the other for rubbing her groin with his penis, with the intent to gratify his sexual desire.[7]

### C. Pretext Telephone Call

Following KA's disclosure of abuse in February 2017 to CM at her boarding school in New Hampshire, KA assisted the Air Force Office of Special Investigations (AFOSI) by engaging in a pretext telephone call with Appellant.[8] The call was monitored and recorded by the AFOSI. During the call, KA confronted Appellant, at one point stating "I need to know, why did you do it? Why you touched me?" Appellant engaged in denials and questioned why KA was asking. The conversation continued, and at one point, KA again asked, "[W]hy did you touch me?"—to which Appellant responded, "I did a lot of things [KA], because I was dumb." Appellant continued, "It was a different time. It was a different life and I was lost." Appellant stated to KA that he was "sorry that [she is] hurting right now." Later in the same phone call, Appellant denied multiple times doing anything to KA and denied touching KA. Appellant requested to apologize in person for his mistakes. KA asked what Appellant was sorry for, to which he responded, "I'm sorry for hurting you." Appellant explained he hurt her by "tearing apart [their] lives." Appellant stated he wanted to apologize for "everything [he] did to [KA], but not over the phone." He reiterated that he would apologize in person. KA asked, "If I see you, will you tell me?" Appellant replied, "[Y]es, of course." KA and Appellant did not meet in person after the call.

### D. Appellant's Testimony

Appellant testified at trial, providing details on his military service, marriage, and family. He denied ever touching KA inappropriately. Appellant stated he was caught off guard by KA's telephone call and was "floored" by the allegations. During his testimony, he explained that during the telephone call with KA he was apologizing for the way they raised the children, him being in the military, and "spanking and pinching [KA]." However, later, in response to a question from a court member, Appellant stated he never pinched KA.

---

[7] The court members' findings excepted the word "buttocks" and substituted the word "groin."

[8] A verbatim transcription of the audio recording of the pretext phone call introduced at trial was not included in the record of trial as required by Air Force Manual 51-503, *Records of Trial*, ¶ 12.8 (4 Sep. 2018).

## II. DISCUSSION

### A. Post-Trial Delay

#### 1. Law

We review whether an appellant has been denied the due process right to a speedy post-trial review de novo. *See Moreno*, 63 M.J. at 135; *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004). *Moreno* established a presumption of unreasonable delay, triggering the *Barker v. Wingo*, 407 U.S. 514 (1972), four-factor analysis, when "the action of the convening authority is not taken within 120 days of the completion of trial," "the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action," and "appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals." *Moreno*, 63 M.J. at 142.

In cases of facially unreasonable delay, we use the four-factor analysis set forth in *Barker*, 407 U.S. at 530: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). When this four-factor analysis is triggered, the factors are balanced, with "no single factor being required to find that post-trial delay constitutes a due process violation." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). *Moreno* adopted a post-trial delay framework for analyzing prejudice using the following interests: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, his or her defenses, in case of reversal and retrial, might be impaired." *Id.* at 138–39 (citations omitted).

"[A] Court of Criminal Appeals has authority under Article 66(c)[, UCMJ, 10 U.S.C. § 866(c),] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)[, UCMJ, 10 U.S.C. § 859(a),] if it deems relief appropriate under the circumstances." *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citations omitted). Our court has established the following factors to be considered to determine if relief under *Tardif* is appropriate:

> 1. How long did the delay exceed the standards set forth in [*Moreno*]?
>
> 2. What reasons, if any, has the government set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?

3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?

4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?

5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?

6. Given the passage of time, can this court provide meaningful relief in this particular situation?

*United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In our consideration of the above factors, "no single factor [is] dispositive, and a given case may reveal other appropriate considerations for this court in deciding whether post-trial delay has rendered an appellant's sentence inappropriate." *Id.* (footnote omitted).

**2. Analysis**

Appellant's sentence was announced on 1 September 2018, and the convening authority took action on 13 March 2019, after 193 days elapsed. This exceeded the *Moreno* threshold of 120 days, and the delay is facially unreasonable. As a result, we conduct the *Barker* four-factor analysis.

### a. Length of the Delay

The Government exceeded the *Moreno* standard by 73 days. The Government concedes this factor weighs in Appellant's favor and we agree.

### b. Reasons for the Delay

The Government argues the reasons for the delay are reasonable, the delay is explainable, and there was reasonable diligence exercised in processing the record. The Government highlights the period of delay included six federal holidays and transcription assistance was utilized in producing the record of trial. Despite the Government's arguments, this factor weighs in Appellant's favor.

### c. Appellant's Assertion of the Right to Timely Review and Appeal

Appellant did not demand speedy post trial review; this factor thus weighs in the Government's favor.

### d. Prejudice

At the time of our decision the Appellant has served 28 months of his three-year confinement sentence. Therefore, based on the record before us we discern

no oppressive incarceration. Further, Appellant has not articulated any particularized anxiety as a result of post-trial delay and we find none. Finally, as this appeal does not result in a rehearing on findings or sentence, we find no impairment of Appellant's ability to present a defense at a rehearing. *Moreno* at 140. Appellant argues he was prejudiced "in that it delayed his appeal and, most importantly, delayed the commencement of waiver of forfeitures." We find Appellant was not materially prejudiced by the convening authority's delay in approving the waiver of forfeitures, an act of clemency. Ultimately, the convening authority approved the maximum period of waiver authorized under Article 58b, UCMJ, 10 U.S.C. § 858b. Furthermore, any argument that delay resulted in prejudice with regard to forfeitures is nullified given our decision below to grant relief for the convening authority's failure to act on Appellant's deferment of forfeitures request. As a result, we find no prejudice for untimely action by the convening authority. *See Moreno*, 63 M.J. at 138–39 (citations omitted).

Further, absent a finding of prejudice as a result of delay, the delay does not constitute a due process violation unless it "adversely affect[ed] the public's perception of the fairness and integrity of the military justice system." *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We do not find the post-trial delay is to the degree that it adversely affected public perception of fairness and integrity as articulated by *Toohey*.

After fully considering the *Barker* factors, we find no due process violation.

### e. Tardif Relief

We have the "authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)." *Tardif*, 57 M.J. at 224 (citation omitted). Considering all the facts and circumstances, and applying the factors articulated in *Gay*, we decline to exercise our Article 66(c), UCMJ, authority for excessive post-trial delay absent a due process violation in this case. *See id.* at 223–24; *Gay*, 74 M.J. at 744. We find Appellant is not entitled to relief for facially unreasonable post-trial delay.

## B. Appellate Delay[9]

Appellant's case was docketed with this court on 29 March 2019. Appellant's counsel was granted five enlargements of time to file his brief, which was filed on 22 November 2019. The Government opposed all the requested enlargements. Also, on 6 October 2020, we issued an order for the Government to show good cause why this court should not grant appropriate relief or take other corrective action for the convening authority's processing of Appellant's

---

[9] The law in this opinion, *supra*, addressing post-trial delay also applies to appellate delay.

deferment requests. The Government answered the show cause order on 19 October 2020, and Appellant replied to the Government's answer on 26 October 2020. We rendered this decision over 18 months after docketing with our court. Therefore, this delay is facially unreasonable. *See Moreno*, 63 M.J. at 142.

Since there is facially unreasonable appellate delay, we conduct a *Barker* analysis. Appellant did not demand speedy appellate review. As to prejudice, Appellant has made no specific claim of prejudice with regard to timely appellate review, and we find none. *See id.* at 138–39 (citations omitted). We also find the three-month delay in appellate review did not "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. After balancing all the *Barker* factors, we find no due process violation for appellate delay. Finally, applying *Gay*, we considered all the facts and circumstances with regard to the appellate delay and decline to exercise our Article 66(c), UCMJ authority for excessive delay absent a due process violation. *See Tardif*, 57 M.J. at 223–24; *Gay*, 74 M.J. at 744. After full consideration, we find Appellant is not entitled to relief for facially unreasonable appellate delay.

## C. Deferment of Forfeitures and Reduction in Grade

### 1. Additional Background

On 14 September 2018 Appellant requested, in writing, that the convening authority "*defer* the adjudged reduction in rank and the automatic forfeitures until action." (Emphasis added). Appellant specifically stated, "[w]e hereby respectfully request relief pursuant to Article 57a(2), UCMJ[, 10 U.S.C. § 857a(2)]." The justification for the deferment request was "to provide financial support to [Appellant's] two dependent children during an extremely stressful and challenging period in his life."[10] On 11 January 2019, the staff judge advocate signed a staff judge advocate recommendation (SJAR) addressed to the convening authority. The SJAR stated:

> On 14 September 2018, [Appellant], through his defense counsel, requested deferment of the reduction in rank and waiver of forfeitures. However, the request was missing evidence of dependency in accordance with [Air Force Instruction] 51-201, paragraph 8.31.2. The trial team regularly (i.e., on a weekly basis)

---

[10] The personal data sheet (PDS) for Appellant introduced at trial documented Appellant had two dependents. The PDS used during post-trial processing also indicated Appellant had two dependents.

contacted defense [counsel] requesting additional documentation. On 11 January 2019, defense counsel confirmed that the necessary dependency information would be provided.[11]

The staff judge advocate then recommended to the convening authority "[i]f the request remains legally insufficient, I recommend you deny the request for deferment of the reduction in rank and waiver of forfeitures." The SJAR did not include reasoning for the recommendation for denial of deferment of reduction in grade. The reason provided for the recommendation for denial of waiver of forfeitures was because evidence of dependency was lacking in the request. Attached to the SJAR was Appellant's 14 September 2018 deferment request.

On 24 January 2019, Appellant submitted clemency matters. Appellant's counsel stated Appellant "requests that you defer his reduction in rank and waive his forfeitures . . . ." Appellant's counsel's memorandum was silent as to Appellant's request for deferment of forfeitures. However, an unsigned written statement from Appellant was submitted with the clemency matters. Appellant stated:

> I write to you, so as not to request early release, nor argue that the sentence, in reference to time, was inadequate, but more so to humbly and respectfully request a change in discharge and reconsideration of my request to defer reduction in rank and forfeitures. It is to my knowledge that the latter has been already denied; thus is the reason I wish to, again, request this deferment.

Later in his clemency submission, Appellant stated further,

> I also wish to request a deferment for my reduction in rank and forfeitures. My actions have negatively affected my life and everyone involved in my life, with special regards to my dependents. I currently have [two] dependents that require my support, and the immediate forfeiture of my wages, I know, really had a negative impact on their lives. I have already affected them negatively, and pray that the forfeiture of my wages be deferred in order to continue giving support to my dependents, providing them an opportunity to prepare for my financial absence. Deferment for my reduction in rank and forfeitures would be highly beneficial for my dependents ensuring they have my support and do not suffer any more than my decisions have already caused.

---

[11] Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 8.31.2 (8 Dec. 2017), states in the relevant part, "Sufficient evidence of dependency is required to support an Article 58b, UCMJ, waiver."

At the end of Appellant's clemency request he again addressed deferment, stating "[p]lease also consider my request to defer rank reduction and forfeitures, as this is a paramount key to my dependents [sic] lives and ensuring they continue to be supported by me, even if it is just for a few more months."

On 22 February 2019, the acting staff judge advocate signed the first addendum to the SJAR. The first addendum stated the "Defense requests you reconsider the denial of his previous request to defer his reduction in rank and waive his forfeitures for the benefit of his minor dependents." The first addendum recommended the convening authority deny the request to defer the reduction in grade, approve the sentence as adjudged, and waive forfeitures. There was no recommendation with regard to Appellant's 14 September 2018 request for deferment of forfeitures; however, there was a recommendation for the convening authority to waive all mandatory forfeitures. The acting staff judge advocate also recommended deferment of Appellant's reduction in grade be denied, stating "[c]onsidering the nature of his misconduct, approving the deferment of rank reduction for [Appellant] to avoid this portion of punishment is not recommended."

On 13 March 2019, the staff judge advocate signed a second addendum to the SJAR. The second addendum again recommended the convening authority deny Appellant's request to defer his reduction in grade, approve the sentence as adjudged, and waive forfeitures. On this same day, the convening authority signed an indorsement to the second addendum, stating "I have considered the attached matters before taking action on this case. The request for the deferment of the reduction is rank is denied." The convening authority's indorsement was silent as to the request to defer forfeitures.

On 6 October 2020, this court ordered the Government to show good cause as to why this court should not grant appropriate relief or take other corrective action. The order stated, "[t]he original record of trial does not include written action by the convening authority on Appellant's request for deferment of forfeitures, nor written reasons from the convening authority for denial of deferment of the adjudged reduction in grade." In response, the Government argued, "Appellant is not entitled to any relief based upon the convening authority's failure to list reasons for [her] denial of the requested deferment [sic] in reduction of grade or to address all of [Appellant's] request for deferment for forfeitures, instead of waiving those forfeitures." On 26 October 2020, Appellant replied to the Government's answer to our show cause order and argued this court should grant appropriate relief.

**2. Law**

We review post-trial processing issues de novo. *United States v. Zegarrundo*, 77 M.J. 612, 613 (A.F. Ct. Crim. App. 2018) (citations omitted). Conven-

ing authority denials of deferment requests shall be in writing and are reviewed for an abuse of discretion. *United States v. Sloan*, 35 M.J. 4, 6 (C.M.A. 1992) (citing Rule for Courts-Martial (R.C.M.) 1101(c)(3)), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018). In the absence of plain error, failure to timely comment on matters attached to the SJAR forfeits a later claim of error. *Id.*; *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [an appellant] must persuade this [c]ourt that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

Mandatory forfeiture of pay during any period of confinement or parole results when a sentence includes confinement for more than six months or confinement for less than six months with a punitive discharge. Article 58b, UCMJ. These forfeitures take effect 14 days after the sentence is adjudged, or the date the sentence is approved by the convening authority, whichever is earlier. *Id.*; Article 57a, UCMJ, 10 U.S.C § 857a. Mandatory forfeitures under Article 58b, UCMJ, may be both deferred pursuant to Article 57a, UCMJ, and waived in accordance with Article 58b, UCMJ. The burden of showing "the interests of the accused and the community in deferral outweigh the community's interest in imposition of the punishment on its effective date" falls on an accused. R.C.M. 1001(c)(3).

Deferment requests, and action on such requests, must be attached to the record of trial. R.C.M. 1103(b)(3)(D). According to the discussion of R.C.M. 1101, when the convening authority denies a deferment request, the written basis for denial "should" be attached to the record of trial. However, our superior court in *Sloan* has mandated the basis for denial be attached to the record of trial. 35 M.J. at 6 (citation omitted); *see also United States v. Tally*, No. ACM 36492, 2007 CCA LEXIS 535, at *4–5 (A.F. Ct. Crim. App. 30 Nov. 2007) (per curiam) (unpub. op.). When there is error, we test for prejudice. *Tally*, unpub. op. at *5.

### 3. Analysis

We now consider whether relief, or corrective action, is necessary as a result of the convening authority's failure to (1) act on Appellant's request for deferment of forfeitures or (2) provide written reasons for denial of Appellant's request for deferment of reduction in grade. The convening authority's failure to state her reasons for denying Appellant's request to defer reduction in grade and failure to act on the request to defer forfeitures are both errors. *See Sloan*, 35 M.J. at 7. The record does not reflect that the convening authority's decision denying deferment of reduction in grade, or reasons for the decision, were provided to Appellant prior to his clemency submission. And, since there is no

written decision by the convening authority with regard to deferment of forfeitures, Appellant was not provided with a written decision prior to his clemency submission. As a result, we find neither error has been forfeited. *See Zegarrundo*, 77 M.J. at 613 (citations omitted).

We come to different conclusions with regard to granting relief for the convening authority's failure to act on deferment of forfeitures and the failure to provide written reasons for denial of Appellant's request for deferment of reduction in grade. Although we find error in both instances, we do not find Appellant was prejudiced for failure to provide reasons for denial of deferment of reduction in grade. However, in the case of deferment of forfeitures, we do find prejudice and take corrective action as set forth in our decretal paragraph.

### a. Deferment of Reduction in Grade

We find no indication in the record Appellant was provided with written reasons for the convening authority's denial of his request for deferment of reduction in grade. This was error. *See Sloan*, 35 M.J. at 7; *see also United States v. Ward*, No. ACM 39648, 2020 CCA LEXIS 305, at *8–9 (A.F. Ct. Crim. App. 3 Sep. 2020) (unpub. op.). Although the convening authority did not provide written reasons for denial, we find the record sufficient to enable us to conduct our review of the convening authority's decision. The staff judge advocate recommended the convening authority deny Appellant's reduction in grade deferment request in the SJAR and the second addendum to the SJAR. Additionally, the acting staff judge advocate recommended denial in first addendum to the SJAR and advised that "[c]onsidering the nature of his misconduct, approving the deferment of rank reduction for [Appellant] to avoid punishment is not recommended." The recommendations included in the SJAR, the first addendum, and second addendum were consistent with the convening authority's decision to deny the request to defer reduction in grade.

We acknowledge our court's recent decision in *United States v. Frantz*, No. ACM 39657, 2020 CCA LEXIS 404 (A.F. Ct. Crim. App. 10 Nov. 2020) (unpub. op.); however, this is not that case. Here, unlike *Frantz*, the convening authority's denial was consistent with the recommendations of the staff judge advocate and acting staff judge advocate to deny the deferment of reduction in grade. Also, included with the acting staff judge advocate's recommendation was her reasons for recommending denial and the convening authority's decision was consistent with that recommendation. As a result, based on the record before us, we are able to review the convening authority's decision for an abuse of discretion, and find none. *See Ward*, unpub. op. at *8–9. We discern no material prejudice to Appellant's substantial rights as a result of the error.

### *b. Deferment of Forfeitures*

The record does not include a written decision on Appellant's request for deferment of forfeitures. *See* R.C.M. 1101(c), Discussion; *Sloan*, 35 M.J. at 7; *Tally*, unpub. op. at *4–5. The Government argues Appellant was not prejudiced because the convening authority granted waiver of forfeitures vice deferment of forfeitures. We are not persuaded by this argument. Deferment is distinct from waiver, and a convening authority has the ability to approve both. Appellant's submissions to the convening authority included requests for both deferment of forfeitures and waiver of forfeitures. Appellant's forfeitures could have been deferred from the date of request on 14 September 2018 until action on 13 March 2019 and at action waived for six months. The convening authority's action on Appellant's waiver request did not absolve her from acting on Appellant's deferment request. Appellant had two dependents, and provided financial support for them as justification for his request, yet the convening authority never acted on it. We find Appellant was prejudiced by the convening authority's failure to act on Appellant's request for deferment of forfeitures as they could have been deferred from the date of the request until action.

We do not find remanding the record to the convening authority for additional post-trial processing necessary, and have determined we can fashion an appropriate remedy for the convening authority's failure to act on Appellant's deferment of forfeitures request. We considered not approving the reduction in grade to E-1 as sentence relief. However, we conclude granting sentence relief by approving one month less confinement is an appropriate remedy. We have concluded reducing confinement is a more meaningful and effective remedy than the other available options and take action as set forth below in our decretal paragraph.

### III. CONCLUSION

We affirm only so much of the sentence as provides for: a bad-conduct discharge; confinement for 2 years and 11 months; and reduction to the grade of E-1. The approved findings and sentence, as modified, are correct in law and fact, and no other error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence, as modified, are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court