# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39663**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Mercilous M. MASSILLON**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 September 2020

———————————

*Military Judge:* Christopher M. Schumann (arraignment); John C. Degnan.

*Approved sentence:* Dishonorable discharge, confinement for 1 year and 6 months, and reduction to E-2. Sentence adjudged 31 October 2018 by GCM convened at Holloman Air Force Base, New Mexico.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Nicole P. Wishart, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge POSCH and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas, of one specification of knowing and wrongful possession of child pornography on divers occasions in violation of

Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1,2] In addition, the military judge found Appellant guilty, contrary to his pleas, of one specification of knowing and wrongful distribution of child pornography in violation of Article 134, UCMJ.[3] The military judge sentenced Appellant to a dishonorable discharge, confinement for one year and six months, and reduction to the grade of E-1. The convening authority approved the dishonorable discharge and confinement, but approved reduction only to the grade of E-2.

Appellant raises two issues on appeal: (1) whether the evidence is legally and factually sufficient to support his conviction for distribution of child pornography, and (2) whether he is entitled to relief for the conditions of his post-trial confinement. Although not raised by Appellant, we also consider whether he is entitled to relief for facially unreasonable post-trial delay. We find no corrective action is warranted, and we affirm the findings and sentence.

## I. BACKGROUND

On 8 or 9 June 2017, Special Agent (SA) DG of the Internet Crimes Against Children Division of the New Mexico Attorney General's Office used investigative peer-to-peer software to search for child pornography on the BitTorrent network. As SA DG explained at trial,[4] BitTorrent—like other peer-to-peer file sharing networks—"relies on the individual users to store and receive and share the files." When a user downloads a file using BitTorrent, the program "automatically" begins sharing the file with other network users. The program does this through a "seeding" process whereby once a piece of a file is downloaded, that piece is "immediately available to share with other users," even before the entire file itself is fully downloaded. As a result, according to SA DG, by the time a user fully downloads a file with BitTorrent, the user has "probably" shared pieces of the file with "hundreds or thousands of other people."

On this occasion, SA DG used an investigative peer-to-peer program designed specifically for law enforcement agents to access and investigate the

---

[1] All references in this opinion to the Uniform Code of Military Justice and Rule for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant pleaded, and the military judge found him, not guilty of certain excepted language in the possession specification.

[3] The military judge excepted from the distribution specification certain language of which he found Appellant not guilty. In addition, the military judge found Appellant not guilty of a second specification of knowing and wrongful distribution of child pornography.

[4] Without objection, the military judge recognized SA DG as an expert in "peer-to-peer investigations."

BitTorrent network. This investigative version differed from the ordinary version of BitTorrent in several respects, including two features significant to this case. First, unlike BitTorrent itself, the investigative tool did not share files with other BitTorrent users. Second, the tool was able to isolate a single BitTorrent user and download files only from that individual, rather than in pieces from numerous individuals across the network. By means of this "single source download" feature, on 8 or 9 June 2017, SA DG was able to download video files containing child pornography from the Internet Protocol (IP) address of a particular BitTorrent user. SA DG then obtained a grand jury subpoena for the Internet service provider for the IP address in question, and learned that the subscriber was Appellant and the service address was on Holloman Air Force Base (AFB), New Mexico.

Upon learning in July 2017 that the user was located on Holloman AFB, SA DG referred the case to the Air Force Office of Special Investigations (AFOSI). AFOSI agents at Holloman AFB obtained a search authorization for Appellant's dormitory room, where they seized several electronic devices, including a computer hard drive. Subsequent analysis of the hard drive revealed both videos and still images of children engaged in sexually explicit conduct, including files that SA DG downloaded in June 2017.

At trial, Appellant pleaded guilty to knowing and wrongful possession of child pornography on divers occasions between on or about 8 July 2016 and on or about 11 July 2017. He pleaded not guilty to a specification alleging he knowingly and wrongfully distributed child pornography between on or about 8 July 2016 and 11 July 2017, of which the military judge found him guilty, as well as a second alleged distribution in November 2017 of which Appellant was acquitted.

## II. DISCUSSION

### A. Legal and Factual Sufficiency of Distribution of Child Pornography

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States*

*v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted), *cert. denied*, __ U.S. __, 139 S. Ct. 1641 (2019).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018) (alteration in original) (quoting *Washington*, 57 M.J. at 399).

The elements of the specification of distributing child pornography in violation of Article 134, UCMJ, for which Appellant was convicted include: (1) that on the dates and at the place alleged, Appellant knowingly and wrongfully distributed child pornography to another; and (2) under the circumstances such conduct was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 68b.b.(3). "'Child pornography' means material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 68b.c.(1).

### 2. Analysis

Appellant does not challenge his conviction for knowingly and wrongfully possessing child pornography on divers occasions, to which he pleaded guilty. Appellant also does not contest that SA DG obtained from Appellant's computer the video files Appellant was charged with distributing, or that the material is in fact child pornography; nor does he contend that any distribution of the material was other than wrongful and service discrediting. Appellant's argument on appeal, as at trial, is that the Government failed to prove he *knowingly* distributed the files through the BitTorrent program.

It is true that the Government lacked direct evidence that Appellant knew he was sharing child pornography with other BitTorrent users. However, "the [G]overnment is free to meet its burden of proof with circumstantial evidence," *King*, 78 M.J. at 221 (citations omitted), and the Government presented substantial circumstantial evidence of Appellant's knowledge.

First, the Government introduced evidence that Appellant lived alone in his dormitory room, and that there was a single active profile on the hard drive

where the child pornography files were found. This evidence indicated that only Appellant used the computer in question.

Second, the Government introduced evidence that Appellant was a proficient user of the BitTorrent program. The Government called WY, a contractor employee who performed a forensic examination of Appellant's hard drive and testified as an expert in computer forensic examinations. WY testified, *inter alia*, that the BitTorrent program must be downloaded onto a hard drive from the Internet. He further testified that he found the BitTorrent program had been installed on Appellant's hard drive and had been used to successfully download batches of files known as "torrents" on seven different days. He further testified that those torrent files had subsequently been deleted on seven different days, which would normally require the user to use the BitTorrent program itself through an interface screen, unless the user was sophisticated enough to find the torrent files in a "hidden folder structure."

Third, the Government introduced evidence that the BitTorrent program itself would have provided notice to Appellant that the program would use his computer to make files available to other users. Through WY, the Government introduced copies of the screens a BitTorrent user was required to navigate in order to initially install the program. The top of the third screen that appeared to the user installing the program informed the user that BitTorrent is a "peer-to-peer file distribution application." If the user scrolled further down the screen to read the "End User License Agreement," he will have seen a section entitled "Automatic Uploading," which would have informed him explicitly that using the program to download files "will, in turn, enable other users to download pieces of those files from you," and that "[y]ou consent to others' use of your network connection to download portions of such files from you." In addition, once the program was successfully installed, the BitTorrent interface screen featured a "Transfer" section that indicated the volume of files or pieces of files that have been "uploaded" to the BitTorrent network from the user's computer, as well as the volume of files or pieces the user has downloaded to his own computer from the network.

This court reviewed a similar although not identical situation in *United States v. Stephens*, No. ACM 38487, 2015 CCA LEXIS 159 (A.F. Ct. Crim. App. 23 Apr. 2015) (unpub. op.). In *Stephens*, as in Appellant's case, a civilian law enforcement agent downloaded files containing child pornography through a peer-to-peer network that made such files available to other network users. *Id.* at *2–3; *cf. United States v. Williams*, 74 M.J. 574, 578 (A.F. Ct. Crim. App. 2014) (holding the download of child pornography by law enforcement agent through peer-to-peer network was legally sufficient to support conviction for distribution of child pornography). As in Appellant's case, Stephens conceded

that he possessed child pornography and did not contest that the agent obtained child pornography from him through the peer-to-peer network. *Id.* at *5. However, also like Appellant, Stephens contended the Government had not proved he knowingly distributed child pornography. *Id.* The Government's case in *Stephens* was arguably stronger than in the instant case in the sense that Stephens had evidently used his peer-to-peer software more extensively than Appellant used BitTorrent; but it was also weaker in the sense that when Stephens's computer was seized, the program's privacy setting entitled "See My Shared Files/Directories" was set on "Nobody," as opposed to the "Everybody" or "Friends only" settings. *Id.* at *5–6. Although this setting would have only "obscured from the view of others a listing of available files," *id.* at *7, and would not have prevented actual file sharing, Stephens argued this setting indicated he sought to hide rather than share his files. *Id.* at *6–7. Nevertheless, this court affirmed his conviction, noting that the program display would have informed Stephens his files, including child pornography files, were being shared with other users, and that the very nature of the program "was designed specifically for sharing." *Id.* at *6–8.

Similar considerations to those identified in *Stephens* apply in Appellant's case. The Government introduced evidence that the very nature of BitTorrent, which Appellant evidently sought out and installed, was to share downloaded files across the network. Furthermore, Appellant almost certainly used the BitTorrent user interface repeatedly, and that interface would have informed Appellant that his files were being uploaded. In addition, as described above, in order to install the BitTorrent program, Appellant would have seen a screen that informed him he was installing a "peer-to-peer file distribution application"—even if he did not then scroll down to read the "Automatic Upload" section explicitly informing him he was enabling others to upload the files he downloaded. Thus, the military judge was presented with substantial circumstantial evidence that Appellant knew he was sharing child pornography through the BitTorrent network.

Drawing every reasonable inference from the evidence of record in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's conviction for wrongful and knowing distribution of child pornography beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Additionally, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325.

**B. Post-Trial Confinement Conditions**

**1. Additional Background**

After Appellant's sentencing on 31 October 2018, he was confined in the Otero County Prison Facility (OCPF) for 37 days before he was transferred to military confinement. In Appellant's clemency submission to the convening authority dated 8 March 2019, Appellant and his trial defense counsel asserted the conditions of Appellant's confinement at OCPF had been unlawful. In particular, trial defense counsel cited that Appellant was confined alone in a cell in administrative segregation. He was allowed only one hour per day, five days per week, for recreation outside his cell, as well as "about ten minutes" three times a week to shower. Appellant was given two left-footed shoes and was never provided a right-footed shoe throughout his confinement at OCPF. In addition, trial defense counsel asserted that the lights were dimmed for eight hours per day, but never fully turned off. Appellant was required to wear a black and white uniform that was different from the other confinees, which enabled the others to "single him out." Furthermore, Appellant asserts he "went over two weeks without commissary privileges," and as a result he went without shampoo, deodorant, books, and other supplies during that time. Finally, Appellant asserts he was not provided a laundry bag until he asked for one after being confined for approximately one week. Appellant asserts he attempted to address his concerns with the commissary and laundry by using a buzzer in his cell, which was either broken or ignored, and by asking the prison staff directly.

Trial defense counsel asserted these conditions were unlawful, particularly Appellant's isolation in administrative segregation, citing this court's decision in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), and Air Force Instruction (AFI) 31-105, *Air Force Corrections Systems* (15 Jun. 2015, as amended by AFGM 2017-01, 28 Jun. 2017). In addition, trial defense counsel asserted the Government was on notice of these confinement conditions because OCPF had been the subject of multiple clemency requests since mid-2017, and in a recent case a military judge had granted three-for-one credit for unlawful pretrial confinement at OCPF pursuant to Rule for Courts-Martial 305(k).

The staff judge advocate had initially recommended the convening authority approve the sentence as adjudged. However, in his addendum to the recommendation, the staff judge advocate recommended the convening authority

grant relief "[d]ue to the issues raised in the defense clemency matters" by approving a reduction only to the grade of E-2, rather than E-1 as adjudged. The convening authority took action in accordance with this recommendation.[5]

On appeal, Appellant renews his contention that he is entitled to relief for the conditions of his confinement at OCPF, as described in his clemency submission. In response, the Government provided a sworn declaration from Captain RO, the Chief of Security at OCPF, addressing the concerns Appellant has raised.[6] Captain RO's declaration is largely consistent with the Defense's factual assertions, other than minor discrepancies such as whether one week or two weeks elapsed before Appellant began making commissary purchases, or whether the time allotted to shower and shave three times a week was limited to ten minutes. We have considered whether a post-trial evidentiary hearing is required to resolve such discrepancies, and we are convinced such a hearing is not required. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). Even if we resolved such minor differences in Appellant's favor, he would not be entitled to relief. *See Ginn*, 47 M.J. at 248.

Captain RO's declaration explains, *inter alia*, that Appellant had access to clothing, laundry services, and basic grooming and sanitary supplies, even without commissary purchases. He explained that OCPF was a multi-agency

---

[5] We note the staff judge advocate's recommendation incorrectly advised the convening authority that the maximum imposable term of confinement for Appellant's offenses was 10 years, whereas the correct figure was 30 years. However, because this error favored Appellant, we find no colorable showing of possible prejudice from the error. *See United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005).

[6] In *United States v. Jessie*, the United States Court of Appeals for the Armed Forces (CAAF) explained the general rule "that the [Courts of Criminal Appeals] may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ." 79 M.J. 437, 441 (C.A.A.F. 2020) (quoting *United States v. Fagnan*, 30 C.M.R. 192, 194 (C.M.A. 1961)) (additional citation omitted). The clemency submission upon which Appellant relies for his factual assertions is part of the entire record, and therefore properly before us with regard to his allegedly unlawful post-trial confinement. *See Jessie*, 79 M.J. at 440. However, the CAAF also recognized that "some [of its] precedents have allowed the [Courts of Criminal Appeals] to supplement the record when deciding issues that are raised by materials in the record," specifically with affidavits or hearings ordered pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). *Jessie*, 79 M.J. at 442. In *Jessie*, the CAAF declined to disturb this line of precedent. *Id.* at 444. Accordingly, we understand *Jessie* to permit our review of Captain RO's responsive declaration that the Government moved this court to attach on appeal. *See United States v. Cink*, No. ACM 39594, 2020 CCA LEXIS 208, at *19–20 (A.F. Ct. Crim. App. 12 Jun. 2020) (unpub. op.).

facility, and confinees wore different uniforms according to their varying statuses in order to "prevent[ ] cross traffic between agencies and ensure[ ] the safety of all inmates and staff members." According to Captain RO, there was no record that Appellant complained that he had two left shoes. In addition, Captain RO notably reported that Appellant "refused recreation 22 days out of 24 days permitted during his stay and provided his signature to confirm his verbal refusal."

**2. Law**

We review de novo whether an appellant has been subjected to impermissible conditions of confinement in violation of the Eighth Amendment[7] or Article 55, UCMJ, 10 U.S.C. § 855. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)).

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *Gay*, 74 M.J. at 740 (citing *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000)). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]."

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and second alteration in original) (internal citations omitted).

Pursuant to our broad authority and mandate under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to approve only so much of the sentence as we find appropriate in law and fact, we may grant sentence relief for a legal deficiency or error in an appellant's post-trial treatment that does not constitute an Eighth Amendment or Article 55, UCMJ, violation. *See United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). However, "[o]nly in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted).

---

[7] U.S. CONST. amend. VIII.

### 3. Analysis

Appellant contends the conditions of his confinement amounted to cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ. We disagree. Appellant fails to establish any of the three elements required under *Lovett*.

First, Appellant has failed to demonstrate any serious act or omission amounting to the "denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). He was provided food, shelter, basic hygiene supplies, and the opportunity to shower regularly; eventually, he was able to purchase items from the commissary. Appellant was provided regular if limited opportunities for recreation outside his cell. He has provided no evidence that the conditions of his confinement were unsanitary, or that he suffered malnutrition or any other ill health effects during his stay at OCPF. Given that Appellant has failed to demonstrate any substantial risk to his health or safety, it is unsurprising that he has also failed to demonstrate the second prong of the *Lovett* test—that OCPF officials were deliberately indifferent to such a risk. 63 M.J. at 215.

Appellant cites this court's decision in *Gay* for the proposition that avoiding commingling with foreign nationals is not an acceptable reason for placement in solitary confinement. 74 M.J. at 743. However, *Gay* avails Appellant not at all with respect to his Eighth Amendment and Article 55, UCMJ, claims; in fact, in *Gay* this court stated the "'routine conditions associated with punitive or administrative segregation' . . . do not 'rise to the level of a deprivation of life's necessities and violation of the Eighth Amendment.'" *Id.* at 742 (quoting *Avila*, 53 M.J. at 102). Similarly, we are not persuaded by Appellant's reference to the standards for restrictive housing in Air Force confinement facilities set forth in AFI 31-105. We have previously declined to find such standards applicable to post-trial confinement in a *non*-Air Force facility. *See United States v. Damm*, No. ACM 39399, 2019 CCA LEXIS 283, at *18 (A.F. Ct. Crim. App. 21 Jun. 2019) (unpub. op.) (involving another Air Force confinee at OCPF). Assuming *arguendo* AFI 31-105 would apply to Air Force confinees at a civilian facility, "[t]he fact that regulations were not followed does not demonstrate a 'sufficiently serious' deprivation under the Eighth Amendment." *Avila*, 53 M.J. at 102. As described above, the actual conditions of Appellant's confinement did not deny him the necessities of life.

Turning to the third prong of the *Lovett* test, even if we give Appellant the benefit of the doubt and assume for purposes of argument that he exhausted the OCPF grievance procedure by ringing the buzzer in his cell and raising at least some of his concerns with the facility staff, at no point did Appellant petition for relief under Article 138, UCMJ. *See Lovett*, 63 M.J. at 215. Appellant

suggests his "very detailed" clemency submission "effectively amounted to an Article 138, UCMJ, complaint." We disagree. The requirement that a confinee must seek administrative relief, including under Article 138, UCMJ, "'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Wise*, 64 M.J. at 471 (alterations in original) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). In this case, Appellant's clemency submission months after he had been transferred out of OCPF hardly served either purpose.

Alternatively, Appellant contends that the conditions of his confinement were an "unusual or egregious" circumstance that warrants an exception to the usual requirement. He compares his situation to that in *United States v. Alexander-Lee*, where this court granted relief for violation of Article 12, UCMJ, 10 U.S.C. § 812, despite the appellant's failure to file a complaint with the confinement facility or submit an Article 138, UCMJ, complaint. No. ACM S31784, 2012 CCA LEXIS 95, at *9–11 (A.F. Ct. Crim. App. 16 Mar. 2012) (unpub. op.). However, we find Appellant's case entirely unlike *Alexander-Lee*, where our decision hinged on circumstances not present here. In *Alexander-Lee*, "the appellant had no understanding of the legal significance of being confined with foreign nationals and his defense counsel was unaware of the situation." *Id.* at *9. Once the defense counsel was apprised, he "acted promptly by informing the convening authority of the situation in the clemency submission." *Id.* In contrast, Appellant was evidently quite aware of the allegedly cruel and unusual circumstances of which he subsequently complained; moreover, so was his trial defense counsel, who emphasized in his clemency submission how the conditions at OCPF had been repeatedly brought to the attention of Air Force authorities in other cases. Yet far from acting promptly, Appellant and his counsel waited until months after Appellant's transfer to raise their concerns.

We have also considered whether Appellant's assertions warrant sentence relief under our Article 66(c), UCMJ, authority in the absence of an Eighth Amendment or Article 55, UCMJ, violation. *See Gay*, 75 M.J. at 268. We find that they do not. Appellant's case did not involve a legal error such as the one present in *Gay*, where the appellant was unnecessarily kept in solitary confinement in a civilian facility at the request of an Air Force official. *Id.* at 268–69. The conditions Appellant describes, although undoubtedly restrictive, do

not constitute one of those very rare circumstances in which Appellant's sentence has been rendered inappropriate as a matter of law. *See Ferrando*, 77 M.J. at 517.[8]

## C. Post-Trial Delay

Appellant's court-martial concluded on 31 October 2018. However, the convening authority did not take action until 16 March 2019. This 136-day period exceeded by 16 days the 120-day threshold for a presumptively unreasonable post-trial delay the United States Court of Appeals for the Armed Forces (CAAF) established in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we have considered the four factors the CAAF identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). "We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *Id.* (citations omitted).

In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted). Where, as in this case, the appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139. Similarly, where Appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id.* at 140. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has made no claim or showing of such particularized anxiety or concern in this case, and we discern none.

---

[8] Appellant's brief also asserts the Government violated Article 58, UCMJ, 10 U.S.C. § 858, which provides in pertinent part: (1) pursuant to instructions prescribed by the service Secretary, a court-martial sentence to confinement may be carried out at a facility under the control of any of the armed forces, under the control of the United States, or which the United States is allowed to use; and (2) persons so confined in facilities not under military control are subject to the same discipline and treatment as non-military confinees held there. Appellant fails to explain his theory as to how the Government violated Article 58, UCMJ. In light of that failure and the foregoing analysis of the Eighth Amendment, Article 55, UCMJ, and Article 66, UCMJ, we find any alleged violation of Article 58, UCMJ, is without merit and requires neither further discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). The court reporter's chronology included with the record of trial indicates the primary cause of the delay was delay in transcribing and authenticating the record of trial, largely due to other court reporting and transcription assignments taking priority over Appellant's record. In addition, Appellant requested speedy post-trial processing, albeit only eight days before the convening authority took action. Recognizing that Appellant's record of trial is not unusually large and that the Government evidently did not prioritize the transcription of Appellant's trial, nevertheless, in light of the absence of prejudice, we conclude the delay was not so egregious as to impugn the fairness and integrity of the military justice system, and we do not find a violation of Appellant's due process rights.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See Tardif*, 57 M.J. at 225. After considering the factors enumerated in *Gay*, 74 M.J. at 744, we conclude it is not.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

13