# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40385**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Adjani K. DAUGHMA**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 16 July 2024[1]

———————————

*Military Judge*: James R. Dorman (pretrial proceedings);[2] Brett A. Landry (arraignment); Colin P. Eichenberger.

*Sentence*: Sentence adjudged 1 July 2022 by GCM convened at Luke Air Force Base, Arizona. Sentence entered by military judge on 4 November 2022: Dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Captain Trevor N. Ward, USAF (argued); Major David L. Bosner, USAF; Major Alexandra K. Fleszar, USAF; Megan P. Marinos, Esquire.

*For Appellee*: Mary Ellen Payne, Esquire (argued); Colonel Matthew D. Talcott, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Major Olivia B. Hoff, USAF; Major Jocelyn Q. Wright, USAF.

Before ANNEXSTAD, GRUEN, and KEARLEY, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge GRUEN joined.

———————————

[1] The court heard oral argument in this case on 24 April 2024.

[2] Pursuant to Article 30a, UCMJ, 10 U.S.C. § 830a.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

KEARLEY, Judge:

A general court-martial composed of a military judge found Appellant guilty, consistent with his pleas, of two specifications of wrongful use, on divers occasions, of a controlled substance (cocaine and marijuana), in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[3] Contrary to his pleas, a panel of officer and enlisted members convicted Appellant of one specification of breach of restriction, in violation of Article 87b, UCMJ, 10 U.S.C. § 887b; and two specifications of sexual assault and two specifications of abusive sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920.[4,5] The military judge sentenced Appellant to a dishonorable discharge, confinement for five years, total forfeiture of pay and allowances, and reduction to the grade of E-1.[6] The convening authority took no action on the findings or sentence.

Appellant raises two issues on appeal: (1) whether the military judge abused his discretion by admitting, over defense objection, evidence that was obtained without the voluntary consent of Appellant; and (2) whether numerous errors in the record of trial require sentencing relief or remand for

_____

[3] Unless otherwise indicated, all references to the UCMJ, the Military Rules of Evidence (Mil. R. Evid.), and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[4] Appellant was found not guilty of two specifications of abusive sexual contact and one specification of obstruction of justice in violation of Articles 120 and 131b, UCMJ, 10 U.S.C. §§ 920, 931b. The Government withdrew and dismissed with prejudice one specification of wrongful distribution of marijuana in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.

[5] Appellant was found guilty of offenses involving two victims. Appellant was convicted of two specifications of sexually assaulting OS, one specification of committing abusive sexual contact against OS, and one specification of committing abusive sexual contact against RR, all in violation Article 120, UCMJ.

[6] Appellant was credited with 163 days pretrial confinement. He was restricted to base from 9 December 2021 until 18 January 2022. Appellant entered pretrial confinement on 19 January 2022 and remained there until his court-martial.

correction. In addition, the court considers the issue of timely appellate review.[7] We find no error materially prejudicial to Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

Appellant and another Airman, OS, lived in the dorms at Luke Air Force Base, Arizona. Appellant and OS were not friends with each other, but they shared a mutual friend, DW. On the evening of 17 February 2020, DW invited both Appellant and OS to a party she was having at her on-base house. At the party, DW noticed that OS was very intoxicated and felt it was time for OS to leave because he looked like he could not sit up on his own. Appellant was serving as a driver for some of the Airmen from the dorms. He drove OS back to the dorm and escorted OS to his room.

Later that evening, DW went to the dorms to check on OS and Appellant because she was expecting Appellant to return to the party. She knocked on OS's door. Appellant eventually answered the door and indicated "OS was okay, he was just drunk." DW entered the room and saw OS naked on the floor of his bathroom, crying and vomiting. He was slumped against the toilet. DW helped get OS into his bed. DW waited on Appellant so they could leave together; she wanted to make sure OS was safe and alone. Sometime before leaving with DW, Appellant took OS's room key card. Later that evening, Appellant returned to OS's dorm and sexually assaulted and committed abusive sexual contact against OS.

In July 2020, OS told a fellow Airman that he had been assaulted by Appellant. That Airman was an undercover informant for Air Force Office of Special Investigations (AFOSI), who later relayed to AFOSI agents what OS had told him about Appellant. AFOSI agents subsequently reached out to OS and interviewed him on 4 March 2021. OS alleged he was sexually assaulted by Appellant in February 2020 but had limited memories about the sexual assault because of his intoxication level at the time. OS also informed the investigators that the day following the alleged assault, Appellant contacted him via Facebook Messenger and SnapChat and attempted to apologize about the incident.

Following their interview of OS, AFOSI investigators obtained a search authorization to seize, copy, and analyze Appellant's phone for "text messages,

---

[7] Our analysis *infra* considers the delay from docketing to decision, not sentence to docketing. We applied the *Livak* standard to a de minimis period of the latter delay, and conclude no relief is warranted. *See United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (establishing an aggregate sentence-to-docketing 150-day threshold for facially unreasonable delay in cases, like Appellant's, that were referred to trial on or after 1 January 2019).

Facebook Messenger messages, Snapchat messages, and any other communications (1) between [OS] and [Appellant] between 19 Feb[ruary 2020] and 16 Mar[ch] 2021 and (2) all communications related to the alleged Article 120, [UCMJ,] incident." The search authorization directed Appellant to "disabl[e] [any] security features" and provide "biometrics" to access the phone.

After receiving search authorization, AFOSI interviewed Appellant. During that interview, AFOSI received consent from Appellant to search his phone. Appellant signed a consent form, indicating AFOSI could search the entirety of his phone. Subsequently, AFOSI discovered photos and videos of a sexually graphic nature between Appellant and OS, to include videos of Appellant recording himself as he committed sexual assault and abusive sexual contact upon OS. Further, during the search, the agents discovered text messages on the phone between Appellant and "Kelly" discussing the sale of drugs and Appellant's drug use. The photos, videos, and messages were admitted as evidence at Appellant's court-martial. Additional facts necessary to resolve the assignments of error are addressed below.

## II. DISCUSSION

### A. Defense Motion to Suppress

Appellant argues the military judge abused his discretion in failing to suppress videos and images seized from Appellant's phone and any evidence derived therefrom because Appellant did not voluntarily consent to the search of his phone. Appellant further argues that the exclusionary rule[8] applies and the military judge's decision not to exclude the evidence was clearly unreasonable and therefore, we should set aside the findings and sentence for the charge and specifications related to sexual assault, abusive sexual contact, and cocaine use. We disagree and find no relief is warranted.

#### 1. Additional Background[9]

On 6 June 2022, the Defense moved the military judge to suppress the videos and images seized from Appellant's phone and any evidence derived therefrom. The Government opposed the motion.

On 27 June 2022, the military judge held an Article 39(a), UCMJ, 10 U.S.C. § 839(a), hearing. At the hearing the Government presented testimony from Special Agent (SA) SH, an AFOSI agent who interviewed Appellant. Trial

---

[8] Mil. R. Evid. 311(a)(3).

[9] Quotes within this section are taken verbatim from the military judge's findings of fact and conclusions of law; they contain grammatical errors that we have not corrected unless indicated otherwise.

defense counsel submitted the video recordings of AFOSI's interview with Appellant and their interview with OS. Appellant did not provide testimony for the limited purposes of the motion. During argument on the motion the Defense posited that evidence supports the conclusion that Appellant's "consent" was the result of coercion on the part of AFOSI. Specifically, the Defense argued that the search of Appellant's phone was illegal, claiming it was seized pursuant to a limited search authorization and the consent Appellant provided was not voluntarily given, it was merely acquiescence to the color of authority based on AFOSI misrepresenting the scope of their search authorization. In opposition, trial counsel argued that Appellant voluntarily consented to have his phone searched by AFOSI and that his consent was given freely without coercion.

After hearing the testimony of SA SH and reviewing the video evidence, the military judge issued a 15-page written ruling outlining his findings and analysis regarding voluntary consent and the exclusionary rule.

### a. Military Judge's Findings of Fact

The military judge made the following findings of fact in his ruling regarding the search authorization and Appellant's interview with AFOSI agents on 16 March 2021:

> Following the rapport building [in Appellant's interview with AFOSI], the agents read [Appellant] his Article 31(b)[, UCMJ,] rights and informed him that he was suspected of sexual assault. [Appellant] initially stated he wanted a lawyer, but then voluntarily changed his mind, waived his right to have an attorney present and agreed to speak with the investigators.[10]

> During their interrogation, the agents asked [Appellant] whether he would be willing to look through his phone to see who he had messaged around the timeframe of the alleged offenses involving OS. [Appellant] agreed to scroll through his phone and allow the agents to look for any communications with the alleged victim.

(Footnote omitted). The military judge then found that SA SH informed Appellant as follows:

---

[10] This court's review of the record shows that after Appellant asked for a lawyer, the investigators stopped the interview. Appellant then asked if he could hear the questions they had, but not necessarily answer them. The agents said they would have to stop talking to him altogether since he asked for a lawyer, but if he wanted to talk, they would re-advise him of his rights. They did, and Appellant waived them and agreed to continue the interview.

"There's the prettiest[11] way of doing this, which is by having you help us out and go through this and go through this together, okay? But we have an affidavit[12] to seize your phone, okay? So, what we're gonna do now is if you'd like to help us out with this, we'll proceed that way. If not, we do have an affidavit to seize this phone, which we're gonna end up doing regardless, ok?"

The AFOSI agents began navigating the phone's contents, while Appellant observed and intermittently aided.

The military judge's findings continued:

[Appellant asked] if he would get his phone back that day or ever. The agents confirmed he would get his phone back eventually, but only after the investigation was completed and they could not predict how long that would take.

[Appellant] expressed concern about leaving the phone completely unlocked with the agents because of the information contained on the phone, which included his personal banking information. Eventually, [Appellant] suggested that he create a new passcode for his phone, which he would provide the agents. The AFOSI agents agreed to [Appellant's] suggestion, allowed him to change the passcode on the phone[,] and [Appellant] share[d] the new passcode with them.

Next, Appellant viewed a photo lineup provided by the agents to see if he could identify OS.[13] Following the lineup, the agents reengaged with the Appellant about the search of his phone. The military judge outlined the following exchange about the consent to search and seize the phone that occurred between the agents and Appellant:

[SA SH]: Okay. So like we discussed before, um, we have a search authorization for your phone. Okay? We're proceeding to doing that. Um, some of the information that we received previously is, is aligning with what we're finding, but what the issue is, it's not matching up with what you've been telling us exactly.

---

[11] The Government asserts the word is "courteous," as in, "There's the courteous way of doing this." The audio recording is unclear. The military judge found "prettiest" to be the word used. As either word is insubstantial to this opinion, this court assumes without deciding, the word is "prettiest."

[12] While SA SH used the word "affidavit," we presume he was referring to the search authorization.

[13] Appellant identified OS as someone he met at a party.

I'm not sure what that's from. I'm not sure if it's lack of memory or, or if you're just lying to us. So we're…

[Appellant]: I'm not lying to you.

[SA SH]: Ok. I appreciate, I appreciate that. We appreciate honesty. Like I said, 0% hostility, 100% honesty. That's what I like. It's the best method for these kinds of situations. So we already have search authorization for your phone, but what we'd like to ask you is if we could just make a copy of the, of the information on the phone, okay, and just basically get your consent to make a copy in the event that some of the information is destroyed, um, unintentionally through the process of, of how we, how we…

(Ellipses in original). At that point, the other agent, SA EB, interrupted. Appellant was concerned about what applications the agents would look through and save. The military judge included the following exchange between SA EB, Appellant, and SA SH:

[SA EB]: . . . All we're asking for is literally just consent, specific to the…a…

[SA SH]: The device.

[SA EB]: Yeah.

[SA SH]: The device itself. That way, we can make a copy of it…of everything contained on the device, on the phone, that way the process can be done a little bit faster, because once we gather all the information, we don't have to sit there and syphon through. Once we get everything, we can go ahead and do that later on our end, because we have a copy of it, and then we can get you your phone back faster. You understand what I am saying? So, we make a copy, we go through it, with the copy, and that way, you can get your phone back faster. Now that's not necessarily saying you're going to get your phone back today. The process still takes a bit, but it…excuse me, my mask…it's still, it is going to speed up the process by making a copy. If ah…does that make sense? Am I making…

[Appellant]: How long is this copy going to be needed?

. . . .

[SA SH]: Once the investigation is…actually, you'll get your phone back. As far as the information being deleted, it will, things will get stored in archive. It, as long as they're case related to our investigation, things just get archived. They're

7

gonna get stored and archived. We don't just wipe them, because they're part of the investigation. Um, if you're concerned about the other stuff…

[Appellant]: [inaudible] Is it FO? It is for official use only?

[SA EB/SH]: Oh yeah, it's more than that.

[Appellant]: Is it just open?

[SA EB]: Oh hell, no, it's way more than that. It's not just for official use only. You're going to look at…

[SA SH]: Law enforcement only…there's other classifications

[SA EB]: Confidential, unclassified information. It's gonna be controlled, to the point where only the people that have a need know, will need to know. And at that, right now, nobody else needs to know. It's us. So, um, yeah I know it's a lot to kinda take in, especially at this capacity, especially where you feel like you're sitting right now, in the environment…no, I completely understand. But like I said, all we're really doing is we're trying to help you out to get you your phone back faster and then, um, granting us consent. Because we do have authorization to seize your phone. And you did provide us consent to look at your phone, and etcetera. It's just that, what we're trying, we're trying to help you out. We're trying to get it back to you faster. So…

[Appellant]: So, is it only you two that have the need to know or are there…

[SA SH]: It's going to be [AF]OSI. [AF]OSI as a whole, right? That's the way the organization runs. If I'm sick, or wanna take a vacation, a much needed vacation, I will be gone and another agent will step in and work the case or something. I can't promise you it will be just us two, but as long as I'm here and he's here, we'll be the ones working on this, we're not, you know, because that's just how it works.

[SA EB]: Are you concerned with the information being shared in a larger audience, in which judgement is introduced?

[Appellant]: I usually don't let my phone out of my hand, so this is just a big decision. I'm just trying to get all of the information. Um…so…if it's just you two and you guys can promise me that like, nothing else is gonna happen from here. You guys are here for one thing and one thing only. You're going to find it or you're not going to find it and that will be it. I will give you consent.

[SA SH]: Okay, so we cannot make promises. We cannot guarantee things. But, what we're telling you is, that as far as the people that are allowed to see this information, right, it's gonna be us as [AF]OSI as an organization. Okay. And then a legal team, if they end up getting involved in this. Other than that, outside of that chain of command, it doesn't go anywhere else.

[SA EB]: Yeah, none of this goes outside of, like I said, the people that need to know.

[SA SH]: Nobody has a reason to see this information and nobody can request to see this information if they don't have authorization to do that. It's in-house.

[SA EB]: Until the investigation is completed…

[SA SH]: And then it gets archived, and no one gives a sh[*]t anymore at that point.

[Appellant]: I will give consent.

(Ellipses in paragraphs in original).

The military judge's findings of fact then explain that after Appellant gave his consent to the agents to copy his entire iPhone, the agents filled out the Air Force Form (AF Form) 1364, *Consent for Search and Seizure*, and presented it to Appellant. SA EB explained the form to Appellant, allowed him to review it, and then specifically explained to Appellant that he was "providing consent to [his] phone," and that such consent included "all information found or stored on [Appellant's] iPhone 11 Pro Max." Appellant was afforded additional time to review the form, without agent interruption, "for approximately 30–40 seconds, and then signed it authorizing the search and seizure of his cell phone." By signing the AF Form 1364, Appellant understood that "he was speaking with AFOSI agents" and that he was suspected of or had knowledge of a sexual assault in violation of Article 120, UCMJ.[14]

The AF Form 1364 indicated Appellant (1) had the right to grant or withhold consent; (2) advised that the scope of consent requested was for the entire phone; and (3) affirmed that consent was given voluntarily and without being subject to coercion, unlawful influence, or unlawful inducement, and without promises of leniency or immunity.

---

[14] The form did not specify if Appellant was "suspected of" or "had knowledge of" a sexual assault in violation of Article 120, UCMJ. The form is designed for one of these phrases to be lined out. This court does not find this to be significant because by the time Appellant received this form, he had been notified by AFOSI that he was suspected of a sexual assault.

The military judge's findings of fact continued:

> At the time [Appellant] granted AFOSI the requested consent to search his phone, [Appellant] had been interviewing with them for approximately four and half hours.

> It is the typical practice of AFOSI to lock interrogation room doors from the outside when agents depart an interrogation, so that the individuals being interrogated do not depart and/or access other areas of the AFOSI building.

> AFOSI agents receive training on how to properly apply for a search authorization, how to carry out a search, and how to seize evidence pursuant to an authorization. AFOSI agents also receive training on making requests for consent to search, which includes instruction that coercive tactics may not be used to obtain consent. [SA SH] understood coercive tactics to mean that agents may not engage in abuse, physical harm, force an individual to consent, nor make an individual believe they have to consent.

> The AFOSI agents did not intentionally attempt to trick [Appellant] into believing they possessed a broader search authorization than they actually possessed at the time of his interview in order to gain consent to search.

(Emphasis added). The military judge also found that the AFOSI agents "did not intentionally employ vague language in this case to trick" Appellant.

### b. The Military Judge's Conclusions of Law

In his written ruling, the military judge applied a framework for determining the voluntariness of consent which included an analysis of six non-exhaustive factors adopted by the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Wallace*, 66 M.J. 5, 9 (C.A.A.F. 2008). In doing so, he also addressed the defense argument that Appellant merely acquiesced to a claim of lawful authority. The military judge concluded by addressing his decision not to apply the exclusionary rule under Mil. R. Evid. 311(a).

As to the first *Wallace* factor—restriction of liberty—the military judge found that a reasonable person in Appellant's position would have believed their liberty had been restricted by the agents for the purposes of a criminal interrogation. However, the military judge found that while Appellant's liberty had been restricted, he was not apprehended, nor did he ask to leave, and he

received a valid rights advisement.[15] After receiving rights advisement, he exercised his right to an attorney and then opted to change that election so he could speak with investigators. The military judge found that all of this demonstrates that despite speaking with AFOSI investigators in this particular setting, Appellant "knew he could terminate the interview by exercising his Article 31(b)[, UCMJ,] rights, and ultimately voluntarily opted to change his mind and continue speaking with investigators." The military judge found that in consideration of all the facts, the "impact that the liberty restrictions had on [Appellant's] ability to make voluntary choices was minimal."

As to the second *Wallace* factor—presence of coercion or intimidation—the military judge recognized that the "Defense's primary argument in support of suppression is that [Appellant's] consent was not voluntary and instead was mere acquiescence to a claim of lawful authority." He wrote a detailed analysis where he ultimately decided:

> At no point did the agents engage in any overtly coercive tactics with [Appellant], nor did they ever expressly tell [Appellant] that the entire contents of his phone would be searched regardless of his consent election. Both agents maintained a calm demeanor throughout the exchanges with [Appellant], offered [Appellant] breaks, did not threaten [Appellant] in any way, allowed [Appellant] to ask questions, and allowed [Appellant] to review the consent form before signing it.

Additionally, the military judge addressed defense concerns that the investigators did not allow Appellant's refusal to consent to end their conversation and found that there was no requirement that they do so. As detailed in his ruling, he wrote:

> In this case, the AFOSI agents left [Appellant] with a free choice: (1) he could consent, which would enable him to get the phone back quickly and ensure the extraction process did not inadvertently result in harm to this phone; or (2) decline to provide consent and be without his phone for a longer period of time. During this portion of the exchange, the AFOSI agents were clear that their request was to copy the entire contents of [Appellant's] phone. [Appellant] asked questions, made statements expressing an understanding of the gravity of his decision, took his time

---

[15] This court notes that the record supports that Appellant asked to leave the room to get his phone to make a phone call; however, this does not on its face conflict with the military judge's findings as these were akin to requests for breaks versus asking to leave for the day.

to reach a decision, questioned who would have access to the copy of his phone, how long the copy of his phone would be maintained, whether the copy of his phone would be destroyed, and asked for assurances that the agents would limit their search to the one thing he believed they were after. The agents specifically refused to give [Appellant] the requested assurance and told him that they could not make any promises or guarantees. Ultimately, after that back and forth, and what appeared to be careful consideration by [Appellant, he] agreed to provide consent to have AFOSI copy the entire contents of his phone.

As part of the coercion analysis, the military judge addressed whether the agents misrepresented the scope of their search authority to Appellant, causing Appellant simply to acquiesce to authority. He determined the evidence did not support this contention. The military judge pointed out that the first time the agents requested to search Appellant's phone, they did not mention any previously obtained authorization or make any comment about their authority to search the phone's contents even if Appellant refused. After this first request, Appellant agreed and voluntarily unlocked his phone to help initiate that examination.

Furthermore, the military judge found that "AFOSI did have authorization to search [Appellant's] phone, albeit limited to messages on certain platforms, between certain date ranges." The military judge found that there is no evidence that the agents made their statements intentionally vague to mislead Appellant and determined that the statements did not have a coercive impact on Appellant.

As to the third and fourth *Wallace* factors—awareness of right to refuse consent and Appellant's mental state at the time—the military judge noted that based on Appellant's interactions with the agents, it is clear he knew he could refuse to give consent to the requested search. He determined that in addition to his specific actions demonstrating knowledge and ability to refuse consent, "the remaining evidence demonstrates that he was of at least average intelligence, was not suffering from any mental impairment, and possessed the intellect and ability to refuse consent if he so desired."

Regarding the fifth and six *Wallace* factors—consultation with counsel and coercive impact of prior rights violations—the military judge found that Appellant did not consult with counsel prior to authorizing the search but was informed of his right to request counsel during the interrogation and ultimately chose not to do so. The military judge found Appellant was not subjected to any prior rights violations when he gave his consent to search.

The military judge ultimately ruled that,

Overall, having evaluated the totality of circumstances from the evidence provided, this [c]ourt finds that [Appellant] gave consent to the contested search and did so voluntarily. [Appellant] was aware of his right to refuse consent, actually did refuse to provide consent at various points throughout his interrogation, but ultimately opted to reconsider and voluntarily consented to a search of his entire phone in an apparent effort to get his actual phone back faster. [Appellant] made that decision of his own free will and did not merely acquiesce to a claim of lawful authority.

In regard to the exclusionary rule, the military judge determined that even if Appellant's consent was impermissibly impacted by AFOSI's actions and/or statements, he "would still find exclusion of the evidence to be inappropriate . . . because exclusion of the evidence would not result in appreciable deterrence of future unlawful searches or seizures and the benefits of any potential deterrence do not outweigh the costs to the justice system."

Ultimately, the military judge found that the Prosecution met its burden by clear and convincing evidence that Appellant's consent to search his phone was voluntary and denied the defense motion to suppress. The military judge admitted the contested videos, images, and messages resulting from this search and the court members found Appellant guilty of sexual assault and abusive sexual contact as well as wrongful use of cocaine.

**2. Law**

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Black*, 82 M.J. 447, 451 (C.A.A.F. 2022) (citing *United States v. Bowen*, 76 M.J. 83, 87 (C.A.A.F. 2017)).

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)). "Military judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable." *United States v. Wilson*, __ M.J. __, No. 23-0225, 2024 CAAF LEXIS 287, at *13 (C.A.A.F. 23 May 2024) (citing *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010)). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and [a military judge's decision] will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citation omitted).

"Where the [G]overnment has prevailed on a motion to suppress, we review the evidence in the light most favorable to the Government." *United States v. Piren*, 74 M.J. 24, 28 (C.A.A.F. 2015) (citing *United States v. Kitts*, 43 M.J. 23, 28 (C.A.A.F. 1995)). "We will not overturn a military judge's finding that a consent to search was voluntary unless it is unsupported by the evidence or clearly erroneous." *Kitts,* 43 M.J. at 28 (citing *United States v. Kosek*, 41 M.J. 60, 64 (C.M.A. 1994)).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

"A warrantless search is per se unreasonable 'subject only to a few specifically established and well-delineated exceptions,' one of which is 'a search that is conducted pursuant to consent.'" *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). "Evidence of a search conducted without probable cause is admissible if conducted with lawful consent." Mil. R. Evid. 314(e)(1). "To be valid, consent must be given voluntarily." Mil. R. Evid. 314(e)(4). "The test for voluntariness is whether the consent was Appellant's own 'essentially free and unconstrained choice' or was [his] will overborne and [his] 'capacity for self-determination critically impaired.'" *Olson,* 74 M.J. at 134 (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976)).

If the consent-based search was derived from express or implied coercion, then the search was not lawful under the Fourth Amendment. *Id.* (citing *Schneckloth*, 412 U.S. at 227). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question to be determined from the totality of the circumstances." *Id.* (alteration in original) (quoting *Schneckloth*, 412 U.S. at 227).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (citations omitted).

Six non-exhaustive factors to assist in analyzing the voluntariness of a consent to search are:

> (1) the degree to which the suspect's liberty was restricted; (2) the presence of coercion or intimidation; (3) the suspect's awareness of his right to refuse based on inferences of the suspect's age, intelligence, and other factors; (4) the suspect's mental state at the time; (5) the suspect's consultation, or lack thereof, with counsel; and (6) the coercive effects of any prior violations of the suspect's rights.

*Wallace*, 66 M.J. at 9 (citations omitted).

When the Government relies upon consent to justify a search, they have the burden of showing the consent was freely and voluntarily given. *Schneckloth*, 412 U.S. at 222 (citations omitted); *Olson*, 74 M.J. at 134. The Government must prove its burden by "clear and convincing evidence." Mil. R. Evid. 314(e)(5).

Consent is not voluntary when it follows false claims by law enforcement agents that they have a search authorization. *Bumper v. North Carolina*, 391 U.S. 543, 546–50 (1968).

"Mere submission to the color of authority of personnel performing law enforcement duties . . . is not a voluntary consent." Mil. R. Evid. 314(e)(4). Nonetheless, "the majority of courts hold consent to be voluntary where the police tell the suspect that if he does not consent, they will 'obtain' or 'seek' a search warrant, provided probable cause for a warrant actually exits." *United States v. Wright*, 52 M.J. 136, 142 (C.A.A.F. 1999) (citations omitted); *see also United States v. Nelson*, 82 M.J. 251, 257 (C.A.A.F. 2022) (affirming Appellant voluntarily provided cell phone passcode where Appellant stated "he had no choice" after law enforcement informed him that they also had a search authorization for his phone).

"It is permissible to use trickery to obtain consent so long as it does not amount to coercion." *United States v. Vassar*, 52 M.J. 9, 12 (C.A.A.F. 1999) (first citing *United States v. Richter*, 51 M.J. 213 (C.A.A.F. 1999); and then citing *United States v. Salazar*, 44 M.J. 464, 468–69 (C.A.A.F. 1996)). Furthermore, investigators are "under no obligation to correct Appellant's misimpression." *Nelson*, 82 M.J. at 257 (citations omitted).

Mil. R. Evid. 311(a)(3) provides that evidence obtained as a result of an unlawful search and seizure is inadmissible against an accused if "exclusion of the evidence results in appreciable deterrence of future unlawful searches or seizures and the benefits of such deterrence outweigh the costs to the justice system." If the defense makes an appropriate motion to suppress, the Government has the burden to prove by a preponderance of the evidence that such deterrence is not appreciable or does not outweigh the costs to the justice system. *See* Mil. R. Evid. 311(d)(5)(A).

When reviewing a military judge's decision whether to apply the exclusionary rule under Mil. R. Evid. 311(a)(3), the court asks "whether the military judge's assessment of these matters was a 'clearly unreasonable' exercise of discretion." *United States v. Lattin*, 83 M.J. 192, 198 (C.A.A.F. 2023) (footnote and citation omitted), *cert. denied*, 144 S. Ct. 187 (2023).

**3. Analysis**

On appeal, Appellant argues that the military judge erred in his application of the *Wallace* factors. The six *Wallace* factors are not exclusive, and the military judge appropriately considered the totality of the circumstances. Therefore, after reviewing the military judge's ruling in the light most favorable to the prevailing party, we conclude the military judge did not abuse his discretion by denying the defense motion to suppress the search of Appellant's phone. However, some discussion of Appellant's most significant arguments is warranted.

Appellant first points out that the CAAF has limited its review of the first *Wallace* factor (restrictions on liberty) to the actual physical limitations imposed on a subject, and therefore the military judge misapplied this factor by analyzing the *impact* of the restriction versus the *restriction* itself. *See, e.g.*, *Olson*, 74 M.J. at 134 (assessing factors such as being placed in a locked room, handcuffed, or otherwise physically restrained).

We conclude that the military judge did not err by analyzing *the impact* of the restriction, as doing so was part of his review of the "totality of the circumstances" under *Olson* and *Wallace*. As the *Wallace* factors are nonexclusive factors, the military judge's reasoning, to include analyzing the impact of the restriction, was not an unreasonable application of *Wallace* factors regarding restrictions of liberty. Additionally, given the other facts the military judge highlighted, to include Appellant's demonstrated knowledge and ability to terminate the interview, we find the military judge appropriately considered the totality of the circumstances when considering the restrictive nature of the interview.

Turning to the second *Wallace* factor (presence of coercion or intimidation), Appellant argues that even if there was no actual coercion, that AFOSI agents used "*per se* coercion" by misrepresenting the scope of their search authorization. Appellant claims that the AFOSI agents misled Appellant to believe they had greater authorization than they did and that Appellant merely acquiesced to the search authorization. Appellant argues the decision in *Bumper* supports his position, and that the military judge failed to recognize *Bumper*'s application by the CAAF, its predecessor (the United States Court of Military Appeals), and this court. We are not persuaded. The military judge reviewed, in substance, the ultimate question in *Bumper*, which was: did Appellant merely

acquiesce to a claim of lawful authority instead of providing voluntary consent? *Bumper*, 391 U.S. at 548–49.

The military judge found that the evidence did not support Appellant's contention that Appellant was merely acquiescing to a claim of lawful authority and therefore did not give consent voluntarily. Upon reviewing the record, the military judge's determination that this is not a case of mere acquiescence is reasonable. The military judge's conclusion that the agents did not intentionally attempt to trick Appellant into believing they possessed a broader search authorization than they did at the time of his interview to gain consent to search is supported by the record. Moreover, unlike the brief exchange of words between the homeowner and the search officials in *Bumper*,[16] here, there was significant discussion between Appellant and the agents regarding his consent. *Bumper*, 391 U.S. at 546–47. Appellant and the AFOSI agents discussed what would happen after Appellant consented and how AFOSI would make a copy of Appellant's phone. Appellant asked questions about who would have access to his phone, how his information would be protected, and how quickly he could get his phone back. Appellant said, "I'm just trying to get all of the information," shortly before he decided to consent to the search of his entire iPhone. Furthermore, Appellant's statement, "this is just a big decision," shows an appreciation for the gravity of the decision and recognition that the decision belonged to him alone.

Finally on this point, when Appellant ultimately consented, he stated in no uncertain terms, "I will consent." This is a much different scenario than in *Bumper* where the owner of the premises "opened the door" after law enforcement announced they had a warrant. *Bumper*, 391 U.S. at 546–47. It was reasonable for the military judge to determine that Appellant's questions throughout the consent discussion and thoughtful manner of expressing his consent, are not the words and actions of someone merely acquiescing or submitting to coercion. Moreover, unlike *Bumper*, Appellant was given a consent form, which the agents summarized, and Appellant carefully read and signed. Therefore, this court finds the military judge's determination that Appellant "did not merely acquiesce to a claim of lawful authority" was not clearly unreasonable.

We conclude that the military judge did not abuse his discretion by denying Appellant's motion to suppress the videos, images, and messages seized from

---

[16] In *Bumper*, when the search officials showed up at the owner's home and announced themselves as law enforcement officials and told her they had a warrant, she immediately let them in, saying, "[C]ome on in and go ahead and search." *Bumper*, 391 U.S. at 546. Based on this communication by the search officials and the homeowner's response, there was no request for consent or any discussion of a consent form as the search officials indicated they had a warrant.

Appellant's iPhone. The military judge's findings of fact were supported by the record and were therefore not clearly erroneous. Furthermore, we find the military judge applied the correct law. The six *Wallace* factors are not exclusive, and the military judge appropriately considered the totality of the circumstances. Finally, recognizing that the military judge had a range of choices, we find his decision to admit the proffered evidence was within that range and therefore not "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *White*, 69 M.J. at 239.

## B. Record of Trial

### 1. Additional Background

Appellant alleges several omissions or errors in the record of trial make the record incomplete such that a remedy is required. Specifically, Appellant alleges that Prosecution Exhibits 8, 13, and 16 were inoperable videos; Defense Exhibits B and C had operable audio but inoperable videos; and Attachment 2 to Appellate Exhibit XX was missing. In their answer to this assignment of error the Government contends Prosecution Exhibits 8 and 13, and Defense Exhibits B and C, are complete and operable. Regarding Prosecution Exhibit 16, the Government concedes that "the video within the PowerPoint presentation will not play, but this may be related to outdated software on the [c]ourt's standalone computer." The Government further concedes Attachment 2 to Appellate Exhibit XX is missing.

### 2. Law and Analysis

A record of trial shall include, *inter alia*, appellate exhibits and exhibits received into evidence. Rule for Courts-Marital (R.C.M.) 1112(b)(6).

This court reviews the question of whether a record of trial is incomplete de novo. *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000). "A substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the Government must rebut." *Id.* at 111 (citations omitted). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id.*

When exhibits are missing from the record of trial, the threshold question is whether the missing exhibits are substantial, either qualitatively or quantitively. *United States v. Davenport*, 73 M.J. 373, 377 (C.A.A.F. 2014) (citation omitted). An omission is quantitively substantial unless "the totality of omissions . . . becomes so unimportant and so uninfluential when viewing in the light of the whole record, that is approaches nothingness." *Id.* (omission in original) (quoting *United States v. Nelson*, 3 C.M.R. 42, 43 (C.M.A. 1953)). The CAAF has held that the omission of a few prosecution exhibits was insubstantial when the information from the missing exhibits was incorporated in the record of trial elsewhere. *Henry*, 53 M.J. at 111.

Under R.C.M. 1112(d) this court may remand an incomplete record of trial to a military judge for correction.

We agree with the Government and find Prosecution Exhibits 8 and 13, and Defense Exhibits B and C, complete and functional in the record of trial. As for Prosecution Exhibit 16, we find it to be complete and functional in the record of trial as well. As for Attachment 2 of Appellate Exhibit XX, we find that the missing attachment is located elsewhere in the record of trial.[17] The fact that the exhibit can be found elsewhere in the record renders the omission "uninfluential when viewing in light of the whole record." In conclusion, since we have had the opportunity to review the content of Attachment 2 of Appellate Exhibit XX elsewhere in the record, we find the omission is not a substantial omission and find it does not impair our ability to do our Article 66, UCMJ, 10 U.S.C. § 866, review.

**C. Timeliness of Appellate Review**

Although not raised by Appellant, we consider whether Appellant is entitled to relief for a facially unreasonable appellate delay. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). We find no relief is warranted.

We review de novo whether an appellant has been denied the due process right to speedy appellate review. *Id*. at 135 (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed, and a decision is not rendered within 18 months of a case being docketed. *Id*. at 142. Accordingly, we have considered the four factors the CAAF identified in *Moreno* to assess whether Appellant's due process right to timely appellate review has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id*. at 135 (first citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); and then citing *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)).

The CAAF has held that where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations

---

[17] Attachment 2 to Appellate Exhibit XX is located within Prosecution Exhibit 1.

omitted). Where the appellant does not prevail on the substantive grounds of his appeal, as in this case, there is no oppressive incarceration. *Id.* at 139. Similarly, where an appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id.* at 140. With regard to anxiety and concern, "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has made no showing of such particularized anxiety or concern with respect the delay in question, and we perceive none.

Accordingly, we consider whether the delay in this case was so egregious as to adversely affect the public's perception of the military justice system. *Toohey*, 63 M.J. at 362. We conclude it was not. With regard to appellate delay, we note this court has issued its opinion just short of two months over the 18-month *Moreno* standard. Appellant filed his initial assignments of error on 7 February 2024—435 days after his case was docketed and after seeking and being granted 12 enlargements of time over the Government's opposition. The Government submitted its answer on 8 March 2024. Appellant submitted his reply brief and requested oral argument on 15 March 2024, which this court granted; oral argument was held on 24 April 2024. We note the transcript and record of trial are large and include sealed material. In the absence of any particularized prejudice to Appellant, we find the delay did not violate Appellant's right to due process. Finally, recognizing our authority under Article 66, UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude no such relief is appropriate.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court